# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LEI WEI, derivatively on behalf ENERNOC, INC. and individually on behalf of himself and all other similarly situated shareholders of ENERNOC, INC., <br><br> Plaintiff, <br><br> vs. <br><br> TIMOTHY G. HEALY, NEIL MOSES, DAVID B. BREWSTER, ARTHUR W. COVIELLO, JR., RICHARD DIETER, TJ GLAUTHIER, SUSAN F. TIERNEY, JAMES BAUM, PETER GYENES, ADAM GROSSER, and JAMES L. TURNER <br><br> Defendants, <br><br> -and- <br><br> ENERNOC, INC., a Delaware Corporation, <br><br> Nominal Defendant. | Civil Action No. <br><br> CLASS ACTION COMPLAINT <br><br> **JURY TRIAL DEMANDED** |

## VERIFIED SHAREHOLDER DERIVATIVE AND CLASS ACTION COMPLAINT

Plaintiff Lei Wei ("Plaintiff") alleges, upon information and belief based upon, inter alia, the investigation made by and through his attorneys, except as to those allegations that pertain to the Plaintiff himself, which are alleged upon knowledge, as follows:

1. Plaintiff asserts this action for breach of fiduciary duties and waste of corporate assets derivatively on behalf of EnerNOC, Inc. ("EnerNOC" or the "Company") against certain current and former members of the Company's Board of Directors (the "Board") for exceeding its authority under the Company's shareholder-approved Amended and Restated 2007 Employee,

Director, and Consultant Stock Plan (the "Stock Plan"). Plaintiff also asserts this action on behalf of himself and the public stockholders of EnerNOC entitled to vote at the Company's 2013 annual meeting (the "2013 Annual Meeting"), a direct claim against members of the Company's current Board for breaching their fiduciary duties in connection with a false and misleading proxy statement filed by the Board.

2.   In particular, the Stock Plan, which provides for the granting of equity awards to the Company's employees, directors, and consultants, limits the amount of stock awards that could be granted to any individual participant within any one fiscal year to no more than 130,000 shares.

3.   As described in more detail below, during the 2010, 2012, and 2013 fiscal years, the Board granted the Company's Chairman of the Board and Chief Executive Officer, Timothy G. Healy ("Healy"), awards covering 150,000 shares, 213,128 shares, and 170,000 shares, respectively, exceeding the 130,000 share limit in each year. Additionally, on April 22, 2013, the Board granted the Company's newly-hired Chief Financial Officer, Neil Moses ("Moses"), an award of 160,000 shares of restricted stock, exceeding the 130,000 share limit for the 2013 fiscal year. In approving and granting the awards to Healy and Moses the Board has breached its fiduciary duties and the excess awards granted to Healy and Moses are *ultra vires* and should be rescinded.

4.   Additionally, on April 26, 2013, the Board filed a Schedule 14A Proxy Statement with the United States Securities and Exchange Commission ("SEC") in connection with the 2013 Annual Meeting of Stockholders (the "2013 Proxy") scheduled for May 28, 2013 (the "2013 Annual Meeting"). In the 2013 Proxy, the Board is soliciting shareholder approval for, among other things, the re-election of two of the Company's directors, and the approval of

certain amendments to the Stock Plan, including increasing the total number of shares authorized for issuance under the Stock Plan by 2,500,000 shares. The 2013 Proxy, however, fails to disclose that the Board violated the shareholder-approved Stock Plan in 2010, 2012, 2013.

5. A board's granting of stock awards in violation of a shareholder-approved stock plan is material information for a shareholder in determining whether to reelect directors as well as approve amendments to that plan, and accordingly the failure to disclose such information constitutes a breach of the Board's fiduciary duty of candor.

6. As a result of the above misconduct, the Company and its shareholders have been, and will be, harmed.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) in that Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interests and costs. Plaintiff is a citizen of Ohio and no defendant is a citizen of Ohio.

8. This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

9. Venue is proper in this district because nominal defendant EnerNOC is incorporated in this district.

## THE PARTIES

10. Plaintiff is a shareholder of EnerNOC and has been a shareholder of EnerNOC continuously at all relevant times. Plaintiff is a citizen of Ohio.

11. Nominal party EnerNOC is a Delaware corporation with its principal place of business at 101 Federal Street, Suite 1100, Boston, Massachusetts, 02110. EnerNOC is a

provider of energy management applications, services, and products, and enables cost effective energy management strategies for commercial, institutional, and industrial end-users.

12. Defendant Timothy Healy co-founded the Company in 2001 and has served as the Company's Chairman of the Board and Chief Executive Officer since 2003. Healy is a citizen of Massachusetts.

13. Defendant David B. Brewster ("Brewster") co-founded the Company in 2001 and has served as a director and President since 2003. Additionally, Brewster served as the Company's Chief Operating Officer from 2003 to January 2008. Brewster is a citizen of Massachusetts.

14. Defendant Arthur W. Coviello, Jr., ("Coviello") has been a director of the Company since 2008. Coviello served as a member of the Board's Compensation Committee (the "Compensation Committee") during the time of the 2012 and 2013 grants discussed herein. Coviello is a citizen of Massachusetts.

15. Defendant Richard Dieter ("Dieter") has been a director of the Company since 2007. Dieter served as a member of the Compensation Committee during the time of the grants discussed herein. Dieter is a citizen of Massachusetts.

16. Defendant TJ Glauthier ("Glauthier") has been a director of the Company since 2007. Glauthier served as a member of the Compensation Committee during the time of the grants discussed herein. Glauthier is a citizen of California.

17. Defendant Susan F. Tierney ("Tierney") has been a director of the Company since February 4, 2010. Tierney is a citizen of Massachusetts.

18. Defendant James Baum ("Baum") has been a director of the Company since April 15, 2013. Baum is a citizen of Massachusetts.

19.     Defendant Peter Gyenes ("Gyenes") has been a director of the Company since April 19, 2013. Gyenes is a citizen of Massachusetts.

20.     Defendant Adam Grosser ("Grosser") was a member of the Board from 2005 through June 3, 2010. Grosser served as a member of the Board's Compensation Committee during the 2010 grants challenged herein. Grosser is a citizen of California.

21.     Defendant James L. Turner ("Turner") was a member of the Board from 2008 through December 15, 2010. Turner served on the Board at the time of the 2010 grants challenged herein. Turner is a citizen of North Carolina.

22.     Defendant Neil Moses has been the Chief Financial Officer of the Company since April 22, 2013.  Moses is a citizen of Massachusetts.

23.     All references to the "Board" in connection with the fiscal 2010 grants challenged herein refer to Defendants Dieter, Glauthier, Healy, Brewster, Grosser, Coviello, Turner, and Tierney.  All references to the "Board" in connection with the fiscal 2012 grants challenged herein refer to Defendants Dieter, Glauthier, Healy, Brewster, Tierney, and Coviello.  All references to the "Board" in connection with the February 15, 2013 grant to Healy challenged herein refers to Defendants Dieter, Glauthier, Healy, Brewster, Tierney, and Coviello.  All references to the "Board" in connection with the April 22, 2013 grant to Moses and the dissemination of the 2013 Proxy refer to Defendants Dieter, Glauthier, Healy, Brewster, Tierney, Coviello, Baum, and Gyenes.

24.     Defendants Healy, Brewster, Coviello, Dieter, Glauthier, Tierney, Baum, Gyenes, Grosser, and Turner are collectively referred to as the "Director Defendants."

## **FURTHER SUBSTANTIVE ALLEGATIONS**

### *The Stock Plan*

25. In 2007, the Stock Plan was adopted by EnerNOC's Board and approved by the Company's shareholders. The Stock Plan was most recently approved by the Company's shareholders on June 2, 2010.

26. The Stock Plan provides for the grant of incentive stock options, nonqualified stock options, stock grants, and other stock-based awards to the Company's employees, directors, and consultants.

27. The Stock Plan provides that no more than 130,000 shares may be granted pursuant to awards under the Stock Plan to any one individual during any one fiscal year. Specifically, as stated in Section 4(c) of the Stock Plan, the Stock Plan's administrator is authorized to:

> Determine the number of Shares for which a Stock Right or Stock Rights shall be granted, *provided, however, that in no event shall Stock Rights with respect to more than 130,000 Shares be granted to any Participant in any fiscal year*[.] (Emphasis added).

28. A "Stock Right" is defined in Section 1 of the Stock Plan and covers all possible awards that may be granted under the Stock Plan. Specifically, a "Stock Right" is defined as "a right to Shares or the value of Shares of the Company granted pursuant to the Plan—an ISO, a Non-Qualified Option, a Stock Grant or a Stock-Based Award."

### *The Company's Equity Grant Practices*

29. Pursuant to Section 1 of the Stock Plan, the Company's Board of Directors is responsible for administering the Stock Plan, and has the authority to delegate such power to a committee of independent directors. The Board has delegated such power to the Compensation Committee which oversees and administers the Stock Plan.

30. The equity grants that are being challenged herein were recommended by the Compensation Committee and approved by the entire Board. As stated in the 2013 Proxy:

> *Equity Grant Practices.* We typically make grants of equity awards, which are recommended by our compensation committee and approved by our full board of directors, to our executive officers on an annual basis or the commencement of an executive's employment with us. Annual equity grants made to our executive officers are usually recommended by the compensation committee and approved by the board of directors at regularly scheduled meetings held during the first quarter of each fiscal year, and equity grants to new executive officers are generally approved prior to but effective on the executive's first day of employment.

Virtually identical language appears in the Schedule 14A proxy statements filed by the Company on April 26, 2012 and April 26, 2011 (the "2011 Proxy").

31. As described below, in 2010, 2012, and 2013, the Board exceeded its authority under the Stock Plan by approving and granting stock awards to Healy and Moses in excess of the fiscal year limit.

### *The Awards to Healy and Moses*

*The 2010 Awards*

32. On February 17, 2010, the Board granted 100,000 stock options and 50,000 shares of restricted stock units to Healy. As described in the 2011 Proxy, these equity grants were made under the Stock Plan and approved by the full Board.

33. By granting Healy awards covering 150,000 shares during fiscal 2010, the Board exceeded its authority under the Stock Plan and breached its fiduciary duty.

34. Consequently, the 20,000 shares granted to Healy in excess of the express limitations of the Stock Plan are *ultra vires* and should be rescinded.

*The 2012 Awards*

35. On March 1, 2012, the Board granted Healy a total of 213,128 shares of restricted stock. As stated in the 2013 Proxy, these equity grants awards were made under the Stock Plan and approved by the full Board.

36. By granting Healy awards covering 213,128 shares during fiscal 2012, the Board exceeded its authority under the Stock Plan and breached its fiduciary duty.

37. Consequently, the 83,128 shares granted to Healy in excess of the express limitations of the Stock Plan are *ultra vires* and should be rescinded.

*The 2013 Awards*

38. On February 15, 2013, the Board granted Healy 170,000 shares of restricted stock. As stated in a Form 4 filed by Healy with the SEC on February 20, 2013, the grant consisted of "a performance-based restricted stock award made pursuant to the [Stock Plan]."

39. In addition, on April 18, 2013 the Company hired Moses as Chief Financial Officer of the Company. In connection with his employment, the Board granted Moses 160,000 shares of restricted stock on April 22, 2013. As described in a Form 8-K filed by the Company on April 23, 2013, and a Form 4 filed by Moses on April 24, 2013, the 160,000 shares were granted pursuant to the Stock Plan.

40. By granting Healy and Moses awards covering 170,000 shares and 160,000 shares, respectively, under the Stock Plan, the Board exceeded its authority under the Stock Plan and breached its fiduciary duty.

41. Consequently, the 40,000 shares of restricted stock granted to Healy and the 30,000 shares granted to Moses in excess of the express limitations of the Stock Plan are *ultra vires* and should be rescinded.

8

### *The Director Defendants Intentionally Violated the Stock Plan*

42.     Each of the Director Defendants knew and/or were on notice of the 130,000 share fiscal year limit in the Stock Plan and thus knowingly granted shares to Healy and Moses in excess of the limit.  Aside from the fact that each of the Director Defendants approved the equity grants being challenged herein and thus certainly knew the terms of the plan these awards were granted under, the following additional facts also lead to the conclusion that the Director Defendants were aware of the existence of the 130,000 share limit:

   a. Defendants Dieter, Glauthier, Coviello, and Grosser were members of the Compensation Committee responsible for administering and overseeing the Stock Plan.

   b. Defendants Healy and Brewster were on the Board that adopted the Stock Plan in 2007 and that adopted and sought and/or is seeking shareholder approval of amendments to the Stock Plan in 2010 and at the 2013 Annual Meeting.  The 130,000 share fiscal year limit is specifically described in the 2010 and 2013 proxy statements.  In addition, defendants Healy and Brewster are eligible to, and have received, awards under the Stock Plan.

   c. Defendant Tierney was on the Board that adopted and sought shareholder approval of amendments to the Stock Plan in 2010 and at the 2013 Annual Meeting.  The 130,000 share fiscal year limit is specifically described in the 2010 and 2013 proxy statements. In addition, defendant Tierney is eligible to, and has received, awards under the Stock Plan.

   d. Defendants Baum and Gyenes were on the Board that adopted and is seeking shareholder approval of amendments to the Stock Plan at the 2013 Annual Meeting.  The 130,000 share fiscal year limit is specifically described in the 2013 Proxy.

   e. Defendant Turner was on the Board that adopted and sought shareholder approval of amendments to the Stock Plan in 2010.

### *The 2013 Proxy is False and Misleading*

43.     On April 26, 2013, the Board filed the 2013 Proxy in connection with the 2013 Annual Meeting, scheduled for May 28, 2013. In the 2013 Proxy, the Board is soliciting shareholder approval for, among other things, (a) the re-election of defendants Healy and

Brewster for a three-year term and (b) certain amendments to the Stock Plan, including an amendment to increase the total number of shares authorized for issuance under the Stock Plan by 2,500,000 shares.

44. As required, the 2013 Proxy describes, among other things, the Company's executive compensation policies and programs, the executive compensation decisions made by the Board and the Compensation Committee in connection with the Company's 2012 fiscal year, and the amount and form of compensation received by the Company's named executive officers during each of the past three years.

45. However, in this discussion, the 2013 Proxy fails to disclose that the Board granted Healy and/or Moses more shares than allowed under the Stock Plan in fiscal years 2010, 2012, and 2013. In considering whether to approve the proposed amendment to the Stock Plan that would allow the Board to grant an additional 2.5 million shares to its executive officers, it is important for shareholders to know that the Board consistently has granted more shares than allowed under the Stock Plan in three of the last four years.

46. Indeed, the 2013 Proxy conveyed the false impression that the Board adheres to the fiscal-year limit when granting awards. The 2013 Proxy contains a detailed description of the "material terms" of the Stock Plan.

47. As stated in the 2013 Proxy:

The following is a summary of the material terms of the 2007 Stock Plan, as it is proposed to be amended and restated…

Our board of directors has the authority to administer the 2007 Stock Plan. Pursuant to the terms of the 2007 Stock Plan, our board of directors has delegated such authority to our compensation committee. Accordingly, our compensation committee has full power and authority, subject to the provisions of the 2007 Stock Plan and applicable law, to… determine the number of shares of common stock to be covered by awards…

> Subject to adjustment for certain changes in our capitalization, no more than 130,000 shares may be granted pursuant to awards under the 2007 Stock Plan to any one individual during any one fiscal year.

By representing that the Board has the authority to determine the number of shares of common stock to be covered by awards, subject only to the terms of the Stock Plan, including its 130,000 share limit, the 2013 Proxy has effectively conveyed the false impression that the Board has abided by the Stock Plan's terms.

48. Certainly before providing the Board with the ability to grant an additional 2.5 million shares under the Stock Plan, shareholders would find it important to also know that the Board has shown no regard for its obligations to comply with the material terms of the Stock Plan in the past.

49. In addition, truthful and complete disclosure regarding the Board's repeated violations of the Stock Plan is material information in determining whether to re-elect Healy and Brewster for another three-year term. Both Healy and Moses are co-founders of the Company and have served on the Board and as executive officers since 2003. Healy has accepted compensation in violation of a shareholder-approved plan in three out of the past four years and Brewster has granted awards in violation of the shareholder-approved plan in three out of the past four years. Truthful and complete disclosure of this information is important for shareholders in determining whether Healy and Moses can and will faithfully comply with their fiduciary duties to the Company.

50. Accordingly, by failing to provide shareholders with this information, the 2013 Proxy is materially misleading thereby preventing shareholders from casting an informed vote regarding the important decisions facing them at the 2013 Annual Meeting.

51.     As a result, because the upcoming election of directors Healy and Brewster as well as the upcoming vote on the amendments to the Stock Plan are scheduled to occur at the 2013 Annual Meeting, that meeting should be enjoined until the Board amends the 2013 Proxy to remedy the materially false and misleading statements and material omissions described above.

## DEMAND FUTILITY ALLEGATIONS

52.     Plaintiff brings this action derivatively on behalf of EnerNOC to redress injuries suffered, and yet to be suffered, by the Company as a direct and proximate result of Defendants' misconduct.

53.     Plaintiff has owned EnerNOC stock continuously during the time of the wrongful course of conduct alleged herein and continues to hold EnerNOC stock.

54.     Plaintiff will adequately and fairly represent the interests of EnerNOC in enforcing and prosecuting its rights and has retained counsel competent and experienced in shareholder derivative litigation.

55.     At the time of this filing the Board consists of the following eight directors: Brewster, Coviello, Dieter, Glauthier, Healy, Tierney, Baum, and Gyenes (the "Current Board"). Each member of the Current Board has been named as a Defendant in this action.

56.     Plaintiff did not make a demand on the Current Board prior to instituting this Action. A pre-suit demand upon the Current Board is futile for several reasons.

57.     Each Current Board member was on the Board that granted awards to Healy and/or Moses in excess of the Stock Plan's 130,000 share fiscal year limit. The Board's actions, in granting awards in violation of the express, unambiguous terms of the Stock Plan could not have been a good faith exercise of business judgment. Accordingly, demand as to the Current Board is excused.

58. Defendant Healy is incapable of considering a demand in this action because he is neither disinterested nor independent. Healy received the awards challenged herein, and thus has a strong financial incentive to maintain the status quo by not authorizing any corrective action because it would force him to disgorge the improperly obtained awards. Accordingly, Healy is not disinterested. In addition, as CEO of the Company, and with his principal source of income based on his employment with the Company, Healy is not independent. Moreover, the 2013 Proxy concedes that Healy does not qualify as an "independent" director within the meaning of the NASDAQ listing rules.

59. Defendant Brewster is also not independent. As President of the Company, and with his principal source of income based on his employment with the Company, Brewster is not independent. The 2013 Proxy concedes that Brewster does not qualify as an "independent" director within the meaning of the NASDAQ listing rules.

## CLASS ACTION ALLEGATIONS

60. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of owners of EnerNOC common stock as of April 8, 2013, the record date for the determination of shareholders entitled to vote at the 2013 Annual Meeting (the "Class"). Excluded from the Class are Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

61. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. According to the 2013 Proxy, as of April 8, 2013, over 29.99 million shares of common stock were

represented by the Company as outstanding. All members of the Class may be identified from records maintained by EnerNOC or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

62. Questions of law and fact are common to the Class, which predominate over questions affecting any individual class member. The common questions include, *inter alia*, the following:

a. Have the Board members breached their fiduciary duties by filing the false and misleading 2013 Proxy; and

b. Whether Plaintiff and the other members of the Class would be irreparably harmed if the 2013 Annual Meeting was held without any of the corrective actions described herein.

63. Plaintiff's claims are typical of the claims of the other members of the class and Plaintiff has the same interests as the other members of the Class.

64. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Accordingly, Plaintiff is an adequate representative of the class and will fairly and adequately protect the interests of the Class.

65. A class action is a superior method for adjudication because the prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

66. Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

67. A class action is a superior method for adjudication because the cost of prosecuting individual actions is prohibitive and the expense of adjudicating repetitious individual claims in different courts would be an inefficient use of judicial resources.

68. Concentrating the litigation of claims in this forum is desirable because the Company is a Delaware corporation and the litigation involves issues of Delaware law.

69. Defendants have acted on grounds generally applicable to the class, making a class-wide adjudication a superior method of resolving the claims and making final injunctive relief appropriate with respect to the Class as a whole.

70. There are no issues requiring individualized resolution or the creation of sub-classes, thus class-wide adjudication will not present manageability concerns.

### COUNT I
### Breach of Fiduciary Duty
### (Against Defendants)

71. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

72. As officers and/or directors of the Company, each of the Defendants owed the Company and its shareholders the fiduciary obligations of loyalty, candor, good faith, and due care.

73. In authorizing, approving, and/or by abdication of duty permitting the granting of awards in violation of the terms of the Stock Plan, the Director Defendants exceeded their

authority under the Stock Plan, did not act in good faith toward the Company and thus breached their fiduciary duties under Delaware law.

74.     These actions were not a good faith exercise of business judgment to protect and promote the Company's corporate interests, but rather lined the pockets of Healy and Moses at the expense and to the detriment of the Company.

75.     Healy and Moses breached their fiduciary duties to the Company by accepting grants in violation of the Stock Plan for their own personal benefit to the detriment and expense of the Company.  Accordingly, Healy and Moses breached their fiduciary duty of loyalty and good faith.

76.     As a result of the Defendants' actions, the Company has been and will be damaged.

77.     Plaintiff and the Company have no adequate remedy at law.

## COUNT II
### Waste of Corporate Assets
### (Against Director Defendants)

78.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

79.     The Director Defendants have caused and will cause the Company to waste valuable corporate assets by granting Healy and Moses awards in excess of what was authorized under the Stock Plan.

80.     By granting Healy awards in excess of the amount allowed under the Stock Plan in fiscal years 2010, 2012, and 2013, and Moses excess awards in fiscal 2013, the Director Defendants granted Healy and Moses awards that no director of ordinary sound business judgment would award, so as to constitute waste.

81. As a result of this waste of corporate assets, the Director Defendants are liable to the Company.

## COUNT III
### Unjust Enrichment
### (Against Healy and Moses)

82. Plaintiff repeats and realleges each and every allegation set forth above as if set forth fully herein.

83. Healy and Moses received unauthorized personal financial benefits as a result of the awards challenged herein.

84. It would be unconscionable and against fundamental principles of justice, equity, and good conscience for Healy and Moses to retain the benefits of the awards that were granted in plain violation of the Stock Plan.

85. Healy and Moses have been unjustly enriched at the expense and to the detriment of the Company.

86. Accordingly, this Court should order Healy and Moses to disgorge the grants awarded in excess of the applicable fiscal year limit in the Stock Plan.

87. Plaintiff has no adequate remedy at law.

## COUNT IV
### Breach of Fiduciary Duty of Candor In Connection With The 2013 Proxy
### (Direct Claim Against the Current Board)

88. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

89. The fiduciary duties of the Current Board require them to be completely truthful with the Company's shareholders and disclose all information material to the decisions confronting EnerNOC shareholders at the 2013 Annual Meeting.

90. As set forth above, the members of the Current Board have breached their fiduciary duty by filing and seeking shareholder action on the basis of the materially false and misleading 2013 Proxy.

91. As a result, Plaintiff and Class members are being harmed irreparably.

92. Plaintiff and the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A. A declaration that the awards granted to Healy in fiscal years 2010, 2012, and 2013, and Moses in fiscal 2013, are in excess of the applicable annual limit in the Stock Plan and are therefore *ultra vires* and not authorized by the Stock Plan;

B. Rescission of the excess grants awarded to Healy and Moses;

C. As to Count IV, declaring this action to be a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

D. Enjoining, preliminarily and permanently, the 2013 Annual Meeting unless, and until, the corrective action described above is taken;

E. Against all Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' breaches of fiduciary duties, waste of corporate assets, and violation of the Stock Plan, plus pre-judgment and post-judgment interest;

F. Equitable and/or injunctive relief as necessary or permitted by law and equity, including disgorgement, attachment, impoundment, and/or imposition of a constructive trust on or otherwise restricting the disposition/exercise of the challenged grants discussed herein;

G. Directing EnerNOC to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with the Stock Plan, applicable laws and

policies, and to protect the Company and its shareholders from a recurrence of the damaging events described herein;

H. Awarding Plaintiff the costs and disbursements of this action, including reasonable allowance of fees and costs for Plaintiff's attorneys, experts, and accountants; and

I. Granting Plaintiff such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: May 3, 2013

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Rosemary J. Piergiovanni (Bar No. 3655)
919 N. Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
bfarnan@farnanlaw.com
rpiergiovanni@farnanlaw.com

*Of Counsel:*

LEVI & KORSINSKY LLP
Eduard Korsinsky
Steven J. Purcell
30 Broad Street, 24th Floor
New York, New York 10004
Tel: (212) 363-7500
Fax: (212) 363-7171