**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| LEI WEI, derivatively on behalf of ENERNOC, INC. and individually on behalf of himself and all other similarly situated shareholders of ENERNOC, INC., <br><br> Plaintiff, <br><br> vs. <br><br> TIMOTHY G. HEALY, NEIL MOSES, DAVID B. BREWSTER, ARTHUR W. COVIELLO, JR., RICHARD DIETER, TJ GLAUTHIER, SUSAN F. TIERNEY, JAMES BAUM, PETER GYENES, ADAM GROSSER, and JAMES L. TURNER, <br><br> Defendants, <br><br> -and- <br><br> ENERNOC, INC., a Delaware Corporation, <br><br> Nominal Defendant. | Civil Action No. 1:13-cv-00766-GMS |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**

OF COUNSEL:

Jeffrey B. Rudman
Andrea J. Robinson
Timothy Perla
Bradley M. Baglien
Brian Driscoll
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 626-6000

Dated: August 30, 2013

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
William M. Lafferty (#2755)
D. McKinley Measley (#5108)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
wlafferty@mnat.com
dmealsey@mnat.com
*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF PROCEEDINGS ..............................................................................1

SUMMARY OF ARGUMENT .................................................................................................2

STATEMENT OF FACTS ......................................................................................................3

     A.    EnerNOC and its Stock Plan.................................................................................3

     B.    The Challenged Grants ........................................................................................5

     C.    The Litigation and the 2013 Proxy .......................................................................6

ARGUMENT .......................................................................................................................7

I.      PLAINTIFF'S CLAIMS RELATING TO THE 2010 STOCK GRANTS ARE TIME-
       BARRED ....................................................................................................................7

II.     PLAINTIFF HAS FAILED TO SUFFICIENTLY ALLEGE DEMAND FUTILITY ........8

     A.    A Majority of the Board Is Disinterested and Independent ....................................8

     B.    Plaintiff Fails to Rebut the Business Judgment Rule Presumption.......................10

III.    ALL CLAIMS SHOULD ALSO BE DISMISSED FOR FAILURE TO STATE A
       CLAIM....................................................................................................................12

     A.    The Complaint Fails to State a Breach of Fiduciary Duty Claim (Count I) ..........12

     B.    Plaintiff Fails to Plead a Waste Claim (Count II) .................................................18

     C.    The Complaint Fails to State an Unjust Enrichment Claim (Count III) ................19

     D.    Plaintiff's Purported Class Action Claim for Breach of the Duty of Candor Is
           Moot, and In Any Event Fails as a Matter of Law (Count IV).............................20

CONCLUSION...................................................................................................................20

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Abrams v. Wainscott*,
  Civ. A. No. 1-297-RGA, 2012 WL 3614638 (D. Del. Aug. 21, 2012) .............................11, 17

*Halpert v. Zhang*,
  No. 12-CV-01339, 2013 WL 4047153 (D. Del. Aug. 8, 2013) ...............................................17

*In re eBay, Inc. Derivative Litig.*,
  Civ. No. 10-470-LPS, 2011 WL 3880924 (D. Del. Sept. 2, 2011)...............................9, 11, 12

*Kamen v. Kemper Fin. Servs., Inc.*,
  500 U.S. 90 (1991)...............................................................................................................8

*Louisiana Mun. Police Employees Ret. Sys. v. Pandit*,
  No. 08 CIV. 7389, 2009 WL 2902587 (S.D.N.Y. Sept. 10, 2009)........................................13

*Marnavi S.p.A. v. Keehan*,
  900 F. Supp. 2d 377 (D. Del. 2012)......................................................................................7

*Moench v. Robertson*,
  62 F.3d 553 (3d Cir. 1995).................................................................................................14

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Raines*,
  534 F.3d 779 (D.C. Cir. 2008) ............................................................................................18

**STATE CASES**

*Aronson v. Lewis*,
  473 A.2d 805 (Del. 1984) ............................................................................................. passim

*Brehm v. Eisner*,
  746 A.2d 244 (Del. 2000) .......................................................................................8, 10, 15, 19

*Freedman v. Adams*,
  C.A. No. 4199-VCN, 2012 WL 1345638 (Del. Ch. Mar. 30, 2012), *aff'd*, 58 A.2d 414
  (Del. 2013) .......................................................................................................................10

*Freedman v. Redstone*,
  Civ. No. 12-1052-SLR, 2013 WL 3753426 (D. Del. July 16, 2013).....................................12

*Guttman v. Huang*,
  823 A.2d 492 (Del. Ch. 2003)..............................................................................................13

*Highland Legacy Ltd. v. Singer*,
  C.A. No. 1566-VCL, 2006 WL 741939 (Del. Ch. Mar. 17, 2006)........................................10

*In re Dean Witter P'ship Litig.*,
No. Civ. A. 14816, 1998 WL 442456 (Del. Ch. 1998)............................................7

*In re Dow Chemical Co. Derivative Litig.*,
C.A. No. 4349-CC, 2010 WL 66769 (Del. Ch. Jan. 11, 2010)................................13

*In re The Goldman Sachs Group, Inc. S'holder Litig.*,
C.A. No. 5215-VCG, 2011 WL 4826104 (Del. Ch. Oct. 12, 2011) .........................11

*In re Lear Corp. S'holder Litig.*,
967 A.2d 640 (Del. Ch. 2008).........................................................................16, 19

*In re NYMEX S'holder Litig.*,
C.A. No. 3621-CVN, 2009 WL 3206051 (Del. Ch. Sept. 30, 2009).......................17

*In re Tyson Foods, Inc.*,
919 A.2d 563 (Del. Ch. 2007).......................................................................7, 16

*Nemec v. Shrader*,
991 A.2d 1120 (Del. 2010) ...................................................................................19

*Rales v. Blasband*,
634 A.2d 927 (Del. 1993) .......................................................................................9

*Saginaw Police & Fire Pension Fund*, No. 10-cv-4720 EJD, 2012 WL 967063 (N.D. Cal
Mar. 21, 2012)........................................................................................................9

*Sanders v. Wang*,
No. 16640-VCL, 1999 WL 1044880 (Del. Ch. Nov. 8, 1999) ...............................17

*Seinfeld v. Slager*,
C.A. No. 6462-VCG, 2012 WL 2501105 (Del. Ch. Jun. 29, 2012) ........................15

*Seminaris v. Landa*,
662 A.2d 1350 (Del. Ch. 1995)..............................................................................10

*Stone v. Ritter*,
911 A.2d 362 (Del. 2006) ......................................................................................16

*White v. Panic*,
783 A.2d 543 (Del. 2001) ............................................................................8, 18, 19

*Wood v. Baum*,
953 A.2d 136 (Del. 2008) ......................................................................................17

*Zucker v. Andreessen*,
C.A. No. 6014-VCP, 2012 WL 2366448 (Del. Ch. Jun. 21, 2012) ........................18

**FEDERAL STATUTES**

I.R.C. § 162(m) (2013) ................................................................................ passim

**STATE STATUTES**

DEL. CODE ANN. tit. 8, §§ 152-54, 157 (West 2013) ................................................12

DEL. CODE ANN. tit. 8, § 174 (West 2013) .............................................................13

DEL. CODE ANN. tit. 10, § 8106 (West 2013) ..........................................................7

RulesFed. R. Civ. P. 12(b)(6) ..............................................................................2

Fed. R. Civ. P. 23.1 ..........................................................................................12

Fed. R. Civ. P. 23.1(b) .......................................................................................8

**REGULATIONS**

26 CFR § 1.162-27(e) .........................................................................................4

26 CFR § 1.162-27(f) .........................................................................................3

**OTHER AUTHORITIES**

Black's Law Dictionary (8th ed. 2004)...................................................................12

Echelon Corp., Proxy Statement (Form 14A) (Apr. 9, 2013) .....................................15

EnerNOC, Inc., Proxy Statement (Form 14A) (Apr. 26, 2010) ...................................4

EnerNOC, Inc., Proxy Statement (Form 14A) (Apr. 26, 2013) ...................................5

EnerNOC, Inc., Statement of Changes in Beneficial Ownership (Form 4) (Feb. 18, 2010) ...........7

Kadant, Inc., Proxy Statement (Form 14A) (Apr. 8, 2013) ........................................15

Maxwell Technologies, Inc., Proxy Statement (Form 14A) (Mar. 26, 2010)...................15

Maxwell Technologies, Inc., Proxy Statement (Form 14A) (Mar. 30, 2012) ..................15

NASDAQ Staff Interpretation Letter 2007-28 ........................................................19

Powersecure International, Inc., Proxy Statement (Form 14A) (Apr. 25, 2008) .............15

Powersecure International, Inc., Proxy Statement (Form 14A) (Apr. 22, 2013) .............15

Defendants Timothy G. Healy, Neil Moses, David B. Brewster, Arthur W. Coviello, Jr., Richard Dieter, TJ Glauthier, Susan F. Tierney, James Baum, Peter Gyenes, Adam Grosser, and James L. Turner, and nominal defendant EnerNOC, Inc. ("EnerNOC" or the "Company") respectfully submit their memorandum in support of the motion to dismiss the Verified Shareholder Derivative and Class Action Complaint (the "Complaint" or "Compl.") pursuant to Rules 23.1 and 12(b)(6) of the Federal Rules of Civil Procedure.

## NATURE AND STAGE OF PROCEEDINGS

This is a shareholder derivative action brought purportedly on behalf of EnerNOC against (i) its current Board of Directors, (ii) certain former members of its Board of Directors, ((i) and (ii) together, the "Board"), and (iii) certain officers.  Plaintiff asserts that the Defendants violated the Company's Amended and Restated 2007 Employee, Director, and Consultant Stock Plan (the "Plan") by making equity grants to the CEO and CFO in excess of what Plaintiff wrongly contends is a yearly cap on equity share grants per employee.  However, because Plaintiff failed to make pre-suit demand, and has failed to plead breach of fiduciary duty, this matter should proceed no further.

Pre-suit demand was required because a majority of the Board is disinterested and independent.  There is no allegation that any outside director received challenged grants, or was subject to any influence that could compromise independence.  And the mere fact that Board members approved the grants does not matter because there is no factual allegation of bad faith (which would be required to establish liability) and because, in any event, the Board did not violate the Plan (Plaintiff's entire case is based on a misreading of the Plan).

Further, regardless of whether demand was required, Plaintiff has failed to state a claim.  Any challenge to the 2010 grant is barred by the statute of limitations.  As for the other grants: (i) all of Plaintiff's claims are based on a misreading of the Plan—there is no absolute cap on

- 1 -

yearly equity grants, and reading one into the Plan would harm the very shareholders that Plaintiff claims to represent; (ii) there are no pleaded facts to establish bad faith (which is the required level of culpability given the existence of an exculpatory clause in the Certificate of Incorporation); (iii) Plaintiff comes nowhere close to pleading waste (for instance, there is no allegation that the grants were excessive or unwarranted); (iv) there is no credible allegation of unjust enrichment; and (v) any disclosure claim is moot.

## SUMMARY OF ARGUMENT

1.      Plaintiff's derivative claims should be dismissed for failure to satisfy the pre-suit demand requirements of Rule 23.1(b)(3) and applicable Delaware law.  Under *Aronson,* the Complaint does not plead particularized facts showing that a majority of EnerNOC's board was either interested or lacked independence.  Moreover, the Complaint fails to allege particularized facts that a majority of the Board acted in bad faith or with the intent to violate the Plan, which is required to overcome the protections of the business judgment rule.

2.      Counts I, II, and III should also be dismissed under Rule 12(b)(6) as to all Defendants.  Plaintiff's claim concerning the 2010 grant is time-barred.  As for the other grants, Plaintiff's breach of fiduciary duty claim (Count I) is deficient because the Complaint fails to plead facts showing bad faith conduct.  Plaintiff also cannot overcome the "extreme test" of pleading a corporate waste claim (Count II) because Plaintiff does not allege facts showing that the challenged awards were an "unconscionable" waste of corporate assets or lacked a legitimate corporate purpose.  Finally, the claim against Messrs. Healy and Moses for unjust enrichment (Count III) cannot survive because the challenged awards were permissible under the Plan, and further because Plaintiff fails to sufficiently plead that they were enriched at the expense of the Company, or in an unjust manner.

3.      Count IV, which alleges a direct claim on behalf of EnerNOC's shareholders for

breach of the fiduciary duty of candor, should be dismissed as moot, and because the Plan and challenged awards that purportedly violated the Plan were previously disclosed.

### STATEMENT OF FACTS

**A.     EnerNOC and its Stock Plan**

EnerNOC is a Delaware corporation that provides energy intelligence software.  In May 2007, the Company completed its initial public offering.  Before doing so, the Company put into place the 2007 Employee, Director and Consultant Stock Plan ("the Prior Stock Plan"), which empowered the Board to make equity grants (*i.e.,* stock, restricted stock and options).  That plan was used to award grants during a three-year "reliance period," a transitional time during which newly-public companies may make tax deductible equity grants without regard for limitations contained in Section 162(m) of the Internal Revenue Code that govern established public companies and cap at $1,000,000 the tax deduction of certain compensation.  *See* 26 CFR § 1.162-27(f).

In 2010, EnerNOC's reliance period was expiring, meaning that further grants would be subject to Section 162(m) taxation rules.  Thus, in June 2010, EnerNOC shareholders voted on a proxy proposal to approve an amended and restated stock plan that could take advantage of a Section 162(m) exemption whereby "performance-based" compensation could continue to be deductible.  The 2010 Proxy stated:

> At the annual meeting, our stockholders will be asked to approve the Amended and Restated 2007 Stock Plan so that certain grants made to Covered Employees under the Amended and Restated 2007 Stock Plan after the Reliance Period, including nonqualified stock options, and restricted stock and other stock-based awards subject to performance-based vesting, may qualify as "performance-based compensation" under Section 162(m) of the Code and therefore be exempt from the cap on our tax deduction imposed by Section 162(m) of the Code.

EnerNOC, Inc., Proxy Statement (Form 14A), at 58 (Apr. 26, 2010) (Attached as Exhibit A to the Measley Declaration) (hereinafter "2010 Proxy").

The new Plan itself (which was attached to the Proxy) contained a host of amendments needed to comply with Section 162(m).  In particular, to be deductible, performance-based equity compensation must, *inter alia*, be awarded pursuant to a plan that specifies measurable performance criteria to determine awards, and specifies the maximum number of share grants per employee per year.  *See* 26 CFR § 1.162-27(e)(2)(vi)(A).  The latter is a cap on *tax deductible shares*—further grants are permitted, but are non-deductible.[1]  The Internal Revenue Code does *not* require that any equity awards  be structured to satisfy the exemption (*i.e.,* a company can always choose to make non-deductible grants).

To meet these requirements, the Plan set criteria for measuring employee performance.  And, in order to satisfy the need for a cap on tax deductible shares, it specified that "in no event shall Stock Rights with respect to more than 130,000 Shares be granted to any Participant in any fiscal year."  Plan ¶ 4.  The Plan also included interpretive rules that ensure harmony with Section 162(m).  Plan Paragraph 4 states:

> [I]nterpretations, rules, determinations, terms and conditions shall be made and prescribed in the context of preserving the tax status under Section 422 of the Code of those Options which are designated as ISOs and in accordance with Section 162(m) of the Code for all other Stock Rights to which the Committee has determined Section 162(m) is applicable.

Plan ¶ 4.  The Plan also empowered the Board to "[i]nterpret the provisions of the Plan and all Stock Rights and to make all rules and determinations which it deems necessary or advisable for

---

[1]      *Id.* § 1.162-27(e)(2)(vi)(B) (stating that deduction not available "to the extent that the number of options granted exceeds the maximum number of shares for which options may be granted to the employee as specified in the plan"); § 1.162-27(e)(2)(vii)(Example 10) (providing illustrative example that, if a plan caps options at 100,000 per employee, per year, then options granted *above* that amount are not tax deductible).

the administration of the Plan." *Id.*  Further, "the interpretation and construction by the [Board] of any provisions of the Plan or of any Stock Right granted under it shall be final…." *Id.*

Shareholders voted in favor of the proposal, thus creating the Amended and Restated 2007 Employee, Director and Consultant Stock Plan ("the Plan").

###    B.       The Challenged Grants

Consistent with their authority under Delaware law and the Plan, the Compensation Committee and the Board assembled compensation packages including cash, tax-deductible equity, and non-deductible equity designed to attract and retain talented management and directors.  *See, e.g.,* EnerNOC, Inc., Proxy Statement (Form 14A) , at 25 (Apr. 26, 2013) (hereinafter "2013 Proxy") (Attached as Exhibit B to the Measley Declaration) (describing compensation program).[2]  That compensation was extensively reviewed against competitors, and made in accordance with recommendations of an independent compensation consultant.  *Id.*  Compensation was also disclosed each year, including in the "Compensation Discussion and Analysis" section of Company proxies.  *Id.*  Plaintiff does not allege that any of the compensation was excessive, unnecessary, or out-of-step with competitors.

Rather, Plaintiff challenges only three years-worth of equity grants made to the CEO and one grant made to the CFO.  In particular, according to the Complaint, CEO Healy received challenged grants as follows: 100,000 stock options and 50,000 shares of restricted stock on February 17, 2010 (Compl. ¶ 32); 213,128 shares of restricted stock on March 1, 2012 (*id.* ¶ 35); and 170,000 shares of restricted stock on February 15, 2013 (*id.* ¶ 38).  CFO Moses received a challenged grant of 160,000 shares of restricted stock on April 18, 2013 (*id.* ¶ 39).  In other words, Plaintiff alleges that the Board exceeded a sub-limitation in the Plan by only 173,128

---

[2]      Grants are recommended by the Compensation Committee and approved by the Board.  *See* 2013 Proxy at 27-28.

shares over a four-year period, which averages to awards of 43,282 stock options or shares per year purportedly in excess of the Plan's sub-limitation. The Complaint asserts that these grants amounted to breach of fiduciary duty and waste purely because they exceeded 130,000 shares per person per year, which Plaintiff contends is an overall yearly limitation on grants based on the Plan language cited above.

### C. The Litigation and the 2013 Proxy

Plaintiff sued on May 3, 2013. The Complaint asserts derivative claims for breach of fiduciary duty, waste, and unjust enrichment, alleging that the Board violated the Plan.

The Complaint also contains a direct claim for violation of the duty of candor based on the 2013 Proxy. In the 2013 Proxy, shareholders were asked to vote on a proposal to add 2,500,000 shares to the total pool available for granting under the Plan. Plaintiff alleges that this Proxy was misleading because it failed to disclose that the Board had repeatedly violated the Plan. On May 9, 2013, Plaintiff moved to enjoin the shareholder meeting. Mot. for Prelim. Inj., *Wei v. Healy*, No. 13-cv-00766 (D. Del. May 9, 2013) (No. 4); Mem. in Supp. of Mot. for Prelim. Inj., No. 13-cv-00766 (D. Del May 9, 2013) (No. 5).

On May 10, 2013, to eliminate cost and distraction, EnerNOC supplemented the Proxy to moot the claim. Specifically, although previous disclosures had already included the dates and amounts of equity grants, the Proxy was supplemented to: (i) reiterate the timing and amounts of the challenged grants, (ii) disclose this litigation and Plaintiff's assertion that certain awards violated a 130,000 share limitation, and (iii) state the Board's position that the Plan's 130,000 share cap applies to tax-deductible performance-based grants. 2013 Proxy at 2-3. Shortly thereafter, Plaintiff withdrew his motion for an injunction.

By a 2:1 margin (13,594,008 for; 7,056,699 against), shareholders approved the proposal.

**ARGUMENT**

**I.    Plaintiff's Claims Relating to the 2010 Stock Grants are Time-Barred**

To the extent Plaintiff's claims are based on the February 17, 2010 awards to Healy,

those claims are time-barred.  The statute of limitations for Plaintiff's breach of fiduciary duty,

corporate waste, and unjust enrichment claims is three years from the date that Plaintiff knew, or

could have known through the exercise of reasonable diligence, of the facts giving rise to his

purported claims.  *See* DEL. CODE ANN. tit. 10, § 8106 (West 2013); *Marnavi S.p.A. v. Keehan*,

900 F. Supp. 2d 377, 394-95 (D. Del. 2012) (dismissing breach of fiduciary duty and corporate

waste claims under three year statute of limitations); *In re Tyson Foods, Inc.*, 919 A.2d 563, 584

(Del. Ch. 2007) (dismissing breach of fiduciary duty claim).  Readily accessible facts from

publicly filed documents, such as SEC filings, are sufficient to trigger the running of the

limitations period.  *See In re Dean Witter P'ship Litig.*, No. Civ. A. 14816, 1998 WL 442456, at

*8 (Del. Ch. 1998) (plaintiff should have been aware of purported claims from annual reports, as

plaintiff "should not put on blinders to such obvious signals as publicly filed documents, annual

and quarterly reports, proxy statements, and SEC filings").

Here, the Board granted the challenged 2010 equity awards to Healy on February 17,

2010, and the awards were disclosed the following day through an SEC Form 4 filing.  *See*

EnerNOC, Inc., Statement of Changes in Beneficial Ownership (Form 4) (Feb. 18, 2010).

Further, the purported 130,000 share limit was fully disclosed in the 2010 Proxy, and the Plan

was approved by shareholder vote on June 2, 2010.  *See supra* at 3-4.  Because Plaintiff did not

file this action until May 3, 2013—over three years after the challenged awards were fully

disclosed—any claim arising from the 2010 grants must be dismissed.

Finally, because the 2010 grants provide the only purported basis for Plaintiff's claims

against Messrs. Turner and Grosser (who served on the Board at the time of the 2010 grant, but

left prior to the next challenged grant), the claims against these defendants should be dismissed in their entirety, with prejudice.

The balance of this memorandum addresses the claims that arise from grants made after 2010.

## II.     Plaintiff Has Failed to Sufficiently Allege Demand Futility

To avoid dismissal of derivative claims (Counts I-III), a plaintiff asserting demand futility must offer "particularized facts to support an inference" that a majority of the board is "*incapable* of exercising its power and authority to pursue the derivative claims directly." *White v. Panic*, 783 A.2d 543, 551 (Del. 2001) (emphasis in original); Fed. R. Civ. P. 23.1(b)(3)(B) (requiring derivative plaintiff to allege "with particularity . . . the reasons for the plaintiff's failure to obtain the action or for not making the effort"); *Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000) (allegations "must comply with stringent requirements of factual particularity that differ substantially from [] permissive notice pleadings"). Plaintiff must allege particularized facts sufficient to create a reasonable doubt that: (1) a majority of the directors at the time the suit was filed are disinterested and independent, or (2) the challenged transaction was otherwise the product of a valid business judgment. *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984). This standard is met only in exceptional situations. *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90 (1991). This is not such a situation.

### A.     A Majority of the Board Is Disinterested and Independent

The EnerNOC Board was composed of up to seven directors at the times of the challenged grants. *See* Compl. ¶ 23. At least six members—Messrs. Coviello, Dieter, Glauthier, Tierney, Baum, and Gyenes—were disinterested and independent. Indeed, the Complaint barely even attempts to suggest otherwise. The "demand futility" section contains only *one* short,

generic paragraph that even addresses these directors (*id.* ¶ 57).  That paragraph does not even allege that the directors are interested or lack independence.  Nor could it.

To successfully challenge independence, Plaintiff would need to "show that the directors are beholden to the [other directors or executives] or so under their influence that their discretion would be sterilized."  *Rales v. Blasband*, 634 A.2d 927, 936 (Del. 1993).  The Complaint does not even attempt to allege that the EnerNOC Board was dominated or controlled by CEO Healy, nor does it plead any facts from which such a conclusion could be drawn.  *See, e.g., In re eBay, Inc. Derivative Litig.*, Civ. No. 10-470-LPS, 2011 WL 3880924, at *5 (D. Del. Sept. 2, 2011) (noting that "Plaintiff does not argue that a majority of the board is controlled or dominated by another (or by extraneous considerations or influences)" and thus did not seriously contest independence); *Saginaw Police & Fire Pension Fund*, No. 10-cv-4720 EJD, 2012 WL 967063, at *7 (N.D. Cal Mar. 21, 2012) ("Plaintiff has not alleged that any . . . director was dominated or controlled by [the defendant CEO] at the time the complaint was filed.  Without such a showing, Plaintiff does not raise a reasonable doubt that a majority of the Board was independent . . . ").

To plead disqualifying interest, Plaintiff would need to allege particularized facts demonstrating that each director "will receive a personal financial benefit from a transaction that is not equally shared by the stockholders…."  *Rales*, 634 A.2d at 936.  However, none of the outside directors received challenged grants, or otherwise derived any personal financial benefit from them.  *See id.*; *Aronson*, 473 A.2d at 812.

Thus, a Board majority is independent and disinterested.[3]

### B.    Plaintiff Fails to Rebut the Business Judgment Rule Presumption

Because the Complaint fails to meet the first *Aronson* prong, Plaintiff must demonstrate

that the challenged awards were not within the bounds of the Board's business judgment.

Plaintiff faces "a substantial burden, as the second prong of the *Aronson* test is directed to

extreme cases in which, despite the appearance of independence and disinterest, a decision is so

extreme or curious as to itself raise a legitimate ground to justify further inquiry and judicial

review." *Highland Legacy Ltd. v. Singer*, C.A. No. 1566-VCL, 2006 WL 741939, at *7 (Del.

Ch. Mar. 17, 2006); *Brehm*, 746 A.2d at 264 ("Irrationality is the outer limit of the business

judgment rule").  "[T]he Court begins its analysis presuming that the business judgment rule

applies, and the plaintiff must establish facts rebutting this presumption." *Freedman v. Adams*,

C.A. No. 4199-VCN, 2012 WL 1345638, at *10 (Del. Ch. Mar. 30, 2012) (citations omitted),

*aff'd*, 58 A.2d 414 (Del. 2013).

Under the business judgment rule, a court will not revisit the merits of a Board decision.

Thus, Plaintiff must show that the Board followed a *clearly inadequate process*.  This occurs in

rare circumstances, such as where the decision-making process was so blatantly inadequate, or

irrational as to suggest the decision could not have reflected a considered business judgment.

*See Brehm*, 746 A.2d at 259 (demand excused only where complaint alleges particularized facts

to create reasonable doubt that "the informational component of the directors' decision-making

process, measured by concepts of gross negligence, included consideration of all material

---

[3]     The Complaint does not assert that the Board is compromised because members face the specter of personal liability.  Further, no amended complaint could successfully meet that standard.  Plaintiff would need to establish "such egregious conduct . . . that [the director] face[s] a substantial likelihood of liability." *Seminaris v. Landa*, 662 A.2d 1350, 1355 (Del. Ch. 1995). Where, as here, there is an exculpatory clause in the Articles of Incorporation, the liability standard is bad faith.  For reasons discussed *infra* Section II, Plaintiff does not come close to satisfying that standard.

information reasonably available"). In particular, executive compensation decisions are a classic example of the exercise of business judgment that a court will not lightly disturb. *In re The Goldman Sachs Group, Inc. S'holder Litig.*, C.A. No. 5215-VCG, 2011 WL 4826104, at *14 (Del. Ch. Oct. 12, 2011) ("[t]he decision as to how much compensation is appropriate to retain and incentivize employees, both individually and in the aggregate, is a core function of a board of directors exercising its business judgment").

Here, the Complaint makes *no challenge whatsoever* to the Board's decision-making process in awarding the challenged grants. There is no allegation that the Board failed to deliberate adequately or failed to inform itself. Indeed, Plaintiff does not even allege that the challenged grants were excessive, unnecessary, or otherwise ill-advised. Nor could he; as detailed above, the yearly Proxies disclose that the Board followed a rigorous process, including extensive benchmarking to competitor company compensation and consultation with an independent compensation consultant. That should conclude the analysis.

Plaintiff cannot alter the result simply by asserting that the Board violated the Plan. *See* Compl. ¶ 57. As an initial matter, as set forth below, the Board did not violate the Plan. Regardless, such allegations do not suffice to overcome the business judgment rule presumption. *See  Abrams v. Wainscott*, Civ. A. No. 1-297-RGA, 2012 WL 3614638, at *3 (D. Del. Aug. 21, 2012) (rejecting "blanket proposition that a shareholder need only allege violation of a compensation agreement to excuse demand" and holding that demand was not futile where plaintiff merely alleged a company's compensation committee "award[e]d compensation in violation of an approved compensation plan") *see also eBay*, 2011 WL 380924, at *7 ("The Supreme Court of Delaware has explained that if a complaint based on a violation of federal law

does not give rise to a reasonable inference that directors knowingly participated in illegal conduct, the complaint fails to satisfy the demand requirement of Rule 23.1").

As one court recently noted in dismissing a challenge to executive incentive compensation on demand failure grounds, "for demand to be excused under the second prong [of *Aronson*] based on a board's violation of a shareholder-approved [compensation] plan, the allegations must support an inference that said violation was made *knowingly and intentionally*." *Freedman v. Redstone*, Civ. No. 12-1052-SLR, 2013 WL 3753426, at \*9 (D. Del. Jul. 16, 2013) (emphasis supplied).  The Complaint is devoid of any particularized facts suggesting that the Board intentionally violated the Plan in granting the challenged awards.  A bare allegation that the Board violated the Plan is particularly deficient where, as here, Plaintiff alleges that the Board exceeded a sub-limitation by only 173,128 shares during a *four-year* period (20,000 shares in 2010, 83,128 shares in 2012, and 70,000 shares in 2013).

Plaintiff also cannot overcome the business judgment rule presumption by merely attaching the phrase "*ultra vires*" to the Board's actions.  A decision is *ultra vires* only if it is "beyond the scope of power allowed or granted by a corporate charter or by law."  Black's Law Dictionary 1559 (8th ed. 2004).  Delaware law defines *ultra vires* acts "narrowly," and "[c]ases discussing *ultra vires* acts have generally involved acts that are alleged to be contrary to a corporation's charter."  *eBay*, 2011 WL 3880924, at \*8.  Here, no such limitation is alleged, and, indeed, Delaware law provides directors wide latitude to issue stock and options under the terms they see fit. *See*  DEL. CODE ANN. tit. 8,  §§ 152-54, 157 (West 2013).

## III.    All Claims Should Also Be Dismissed For Failure to State a Claim

### A.    The Complaint Fails to State a Breach of Fiduciary Duty Claim (Count I)

Plaintiff also fails to state a claim in connection with the 2011 and 2012 grants to Healy and Moses.  Count I is deficient because Plaintiff has failed to plead facts sufficient to establish a

breach of fiduciary duty.  The liability standard is heightened where, as here, an exculpatory

provision in the Certificate of Incorporation precludes monetary claims for breaches of the duty

of care.[4]  *See Guttman v. Huang*, 823 A.2d 492, 501 (Del. Ch. 2003) ("the threat of liability that

directors face can be influenced in a substantial way if the corporate charter contains an

exculpatory charter provision"); *Louisiana Mun. Police Employees Ret. Sys. v. Pandit*, No. 08

CIV. 7389, 2009 WL 2902587, at *7 n. 5 (S.D.N.Y. Sept. 10, 2009) (under Delaware law, where

plaintiff  "faces the additional substantial impediment created by the presence of an exculpatory

provision" he must provide particularized allegations of non-exculpated conduct).  Specifically,

Plaintiff must plead particularized facts to establish a breach of the duty of loyalty – *i.e.,* bad

faith, intentional misconduct, or knowing violations of the law.  *See id.*; *In re Dow Chemical Co.*

*Derivative Litig.*, C.A. No. 4349-CC, 2010 WL 66769, at *12 (Del. Ch. Jan. 11, 2010).

For at least two reasons, Plaintiff cannot meet that pleading standard.

1.     The Board Did Not Violate the Plan

First, the Board did not violate the Plan.  The 130,000 share limitation cited in the

Complaint limits the tax-deductible shares that may be granted per year, not the overall shares

that may be granted.  In other words, the Board had the authority to grant in excess of 130,000

shares per person annually, but any "excess" shares would not be susceptible to tax deduction

under Section 162(m).  Thus, the Board did not violate the Plan by, on some occasions, granting

more than 130,000 shares in a single year.

---

[4]     *See* Amended and Restated Certificate of Incorporation of EnerNOC, Inc. filed May 3, 2007, §7  (Attached as Exhibit C to the Measley Declaration) ("The Corporation eliminates the personal liability of each member of its Board of Directors to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, provided, however, that, to the extent provided by applicable law, the foregoing shall not eliminate the liability of a director (i) for any breach of such director's duty of loyalty to the Corporation or its stockholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (iii) under Section 174 of Title 8 of the Delaware Code or (iv) for any transaction from which such director derived an improper personal benefit.").

The parties' disagreement presents a question of interpretation of the Plan and the 130,000 share limitation.  Thus, to resolve it, the Court must apply the interpretive rules set forth in the Plan.  Specifically, the Plan states that *the Board* is empowered to interpret the Plan, and that *Board* interpretations are "final."  *See* Plan ¶ 4.  Given this interpretive discretion, the Board's reasonable  interpretation of the Plan controls.  *See Moench v. Robertson*, 62 F.3d 553, 566 (3d Cir. 1995) (where stock plan gave board broad discretion to interpret its terms, an "arbitrary and capricious standard applies and [courts] will disturb [the Board's] interpretation only if its reading of the plan documents was unreasonable").

Here, the Board has proffered a perfectly reasonable interpretation of the Plan and the 130,000 share limitation (*i.e.,* it is a limitation on tax-deductible grants).  This interpretation is required because, as detailed above, in 2010, EnerNOC shareholders approved an amended and restated stock plan for the *sole and express* purpose of complying with Section 162(m).  In furtherance of that stated objective, Paragraph 4 of the Plan requires that "interpretations, rules, determinations, terms and conditions shall be made and prescribed ... *in the context of ... [and] ... in accordance with* Section 162(m)...."  Plan ¶ 4 (emphasis supplied).  And, as detailed above, Section 162(m) calls for a cap on share grants *that are eligible for a tax deduction*, not an overall grant cap.  Because the Plan must be read "in accordance with" Section 162(m), it is reasonable to interpret the 130,000 share cap as *the cap Section 162(m) requires*, *i.e.*, a cap on tax deductible shares.[5]  Under the Plan, this reasonable interpretation is "final."

Plaintiff's reading of the Plan would not accord with Section 162(m) (which does not require an absolute cap), and would harm the shareholders that he claims to represent.  An

---

[5]     In fact, due to the onerous requirements of Section 162(m), EnerNOC (like many other companies) discloses that it assesses tax deductibility as just one factor in determining the structure and size of its equity awards.  *See, e.g.,* 2013 Proxy ("The compensation committee is mindful of deductibility for tax purposes of the named executives' compensation.  However, we may from time to time pay compensation to our executive officers that may not be deductible.")

overall yearly 130,000 share cap would fall well below awards made by EnerNOC's competitors.[6]  Competitors—as permitted by Section 162(m)—award some compensation that is exempt from the deduction limitations under Section 162(m), and some that is not.[7]  Plaintiff's overly restrictive interpretation of the cap would make it unduly difficult for EnerNOC to attract and retain high quality management.  It also would not comport with the fundamental proposition of Delaware law that the Board manages the company, including setting appropriate compensation.  *Brehm*, 746 A.2d at 263 (giving broad deference to board decisions on executive compensation and affirming that such decisions are "the essence of business judgment"); *Seinfeld v. Slager*, C.A. No. 6462-VCG, 2012 WL 2501105, at *3 (Del. Ch. Jun. 29, 2012) ("There are a variety of reasons why a company may choose or not choose to take advantage of certain tax savings, and generally a company's tax policy typif[ies] an area of corporate decision-making best left to management's business judgment, so long as it is exercised in appropriate fashion").

Indeed, EnerNOC shareholders clearly do not agree with Plaintiff's reading of the Plan, or allegations of Board misconduct.  As detailed above, at EnerNOC's annual meeting in May 2013, shareholders voted on a proposal to increase the pool of shares available under the Plan and re-elected Messrs. Healy and Brewster as directors.  Proxy materials filed prior to the

---

[6]     *See, e.g.*, Echelon Corp., Proxy Statement (Form 14A), at 20 (Apr. 9, 2013) (authorizing grant up to 1,000,000 shares to attract and retain best available personnel); Maxwell Technologies, Inc., Proxy Statement (Form 14A), at 13 (Mar. 26, 2010) (authorizing grant of 500,000 shares during an employee's first year with the corporation and 250,000 for each subsequent year); Powersecure International, Inc., Proxy Statement (Form 14A), at 16 (Apr. 25, 2008) (authorizing maximum grant of 500,000 shares per year).

[7]     *See, e.g.,* Powersecure International, Inc., Proxy Statement (Form 14A), at 40 (Apr. 22, 2013) (retaining authority to award compensation in excess of limits placed by § 162(m)); Kadant Inc., Proxy Statement (Form 14A), at 21 (Apr. 8, 2013) (committee retains independent judgment to approve nondeductible compensation); Maxwell Technologies, Inc., Proxy Statement (Form 14A), at 29 (Mar. 30, 2012) (compensation committee may award compensation in excess of § 162(m) limitations).

meeting disclosed this litigation, including Plaintiff's contentions.[8]  By a 2:1 margin,

shareholders approved the amendment.  Had shareholders shared Plaintiff's contention that the

Board has systematically breached its fiduciary duties and committed waste by violating the

Plan, they would not have voted overwhelmingly to add millions of additional shares to the Plan.

### 2.    The Complaint Does Not Plead Bad Faith

Even if the Complaint were to identify a Plan violation (it does not), that would not be

sufficient to plead breach of fiduciary duty because, as detailed above, liability requires bad

faith.  This means conduct where:

> The fiduciary intentionally acts with a purpose other than that of advancing the
> best interests of the corporation . . . acts with the intent to violate applicable
> positive law, or . . . intentionally fails to act in the face of a known duty to act,
> demonstrating a conscious disregard for his duties.

*Stone v. Ritter*, 911 A.2d 362, 369-70 (Del. 2006).

Plaintiff's conclusory allegations that "the Director Defendants . . . did not act in good

faith" by granting the challenged awards "in violation of the terms of the Stock Plan" are

insufficient as a matter of law.  *See, e.g., In re Lear Corp. S'holder Litig.*, 967 A.2d 640, 652

(Del. Ch. 2008) (to show bad faith, plaintiff must "rest on facts that support a fair inference that

the directors consciously acted in a manner contrary to the interests of [the company] and its

stockholders"); *In re Tyson Foods Inc. Consolidated S'holder Litig.*, 919 A.2d at 592 ("Where a

director is independent and disinterested, there can be no liability for corporate loss, unless the

facts are such that no person could possibly authorize such a transaction if he or she were

attempting in good faith to meet their duty").

---

[8]      The fact that the Board had made grants of more than 130,000 shares per year was not
news to shareholders.  The Plan document (containing the 130,000 share language) is public.
And grant amounts were disclosed in the Compensation Discussion and Analysis sections of
yearly proxies.

Moreover, even if there had been a plan violation, that would not be sufficient to establish bad faith. *See Wood v. Baum*, 953 A.2d 136, 142 (Del. 2008) ("Delaware law on this point is clear: board approval of a transaction, even one that later proves to be improper, without more, is an insufficient basis to infer culpable knowledge or bad faith on the part of individual directors"). Rather, Plaintiff must plead facts showing that the Board *knowingly* engaged in *intentional misconduct* in connection with the challenged awards or derived an improper personal benefit from the awards. *See In re NYMEX S'holder Litig.*, C.A. No. 3621-CVN, 2009 WL 3206051, at *6 (Del. Ch. Sept. 30, 2009). The Complaint does not even attempt to plead such facts and, as noted, only challenges awards totaling approximately 170,000 of shares and options over a four-year period.[9]

Indeed, the notion that the Board intentionally violated an absolute cap on grants makes no sense because, if such a limitation existed, the Board could simply have raised it. NASDAQ listing rules permit a board (without the need to seek shareholder approval) to amend a per year per grantee limit in a stock plan. *See* NASDAQ Staff Interpretation Letter 2007-28 (available at https://listingcenter.nasdaqomx.com/assets/StaffInterpLtrs20111231.pdf) (last visited August 29,

---

[9]     To the extent that Plaintiff may seek to rely on *Sanders v. Wang*, No. 16640-VCL, 1999 WL 1044880 (Del. Ch. Nov. 8, 1999), that case is readily distinguishable. In *Sanders*, the Court of Chancery determined that the board acted outside its authority by granting more shares than it was authorized to grant under the entire plan pool and the board awarded grants far in excess of the shares authorized. *Id.* at *1, 5 ("uncontroverted facts" indicated "that the number of shares the board actually awarded exceeded [the plan's] limitation" by *9.5 million shares*). Here, Plaintiff alleges that the Board exceeded a *sub-limitation* by only 173,128 shares over a *four-year* period. In any event, subsequent cases have rejected the suggestion that *Sanders* stands for a "blanket proposition that a shareholder need only allege violation of a compensation agreement to excuse demand." *Abrams v. Wainscott*, 2012 WL 3614638, at *3. Furthermore, *Halpert v. Zhang*, No. 12-CV-01339, 2013 WL 4047153 (D. Del. Aug. 8, 2013) is not to the contrary. First, in *Halpert*, the board exceeded the 100,000 share limitation by granting 750,000 shares – a 650,000 share difference – in a single year, as opposed to the 173,128 shares over four years in this case. Finally, in *Halpert*, there was a clear violation of the plan's terms whereas here, the Board did not violate the terms of the Plan.

2013)).[10]  In light of this available avenue, there would be no need for a "bad faith" violation of

the Plan in order to make the challenged grants.  The only plausible explanation is that the

Board, in good faith, did not interpret the Plan as limiting their discretion to grant awards to

begin with.

### B.    Plaintiff Fails to Plead a Waste Claim (Count II)

Plaintiff has also failed to plead a claim for waste.  As an initial matter, because the waste

claim is premised on a Plan violation, it fails because there was no such violation.  *See supra* §

II.A.  More importantly, waste is an extreme standard that the Complaint does not meet.

To prevail on a claim of corporate waste, Plaintiff "must overcome the general

presumption of good faith by showing that the board's decision was so egregious or irrational

that it could not have been based on a valid assessment of the corporation's best interests."

*White*, 783 A.2d at 554 n.36.  Under Delaware law, corporate waste claims must withstand "an

extreme test" that is "very rarely satisfied by a shareholder plaintiff."  *Zucker v. Andreessen*,

C.A. No. 6014-VCP, 2012 WL 2366448, at *8 (Del. Ch. Jun. 21, 2012) (internal citation

omitted).  The claim will survive only if the challenged transaction was "so disproportionately

large as to be unconscionable."  *Id.* (citation omitted).

Plaintiff's pleading hurdle is further heightened where, as here, the waste claim concerns

executive compensation, an area in which courts have shown significant deference to board

decisions.  *See, e.g., Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Raines*, 534

F.3d 779, 791 (D.C. Cir. 2008) ("courts rarely second-guess directors' compensation and

---

[10]      When asked about a proposed amendment to increase a yearly limitation on per person grants, NASDAQ staff responded in an interpretive letter: "we have determined that the Amendment is not a material amendment under the Rule.  In that regard, we note that notwithstanding the increase in the Annual Restricted Stock Limitation, neither the Aggregate Plan Limitation nor the Aggregate Restricted Stock Limitation would be affected by the Amendment.  In addition, the Amendment would not expand either the class of participants or the types of awards available.  Accordingly, the Rule does not require shareholder approval for the Amendment."

severance decisions because the 'size and structure of executive compensation are inherently matters of judgment.'") (quoting *Brehm*, 756 A.2d at 263).

Here, the Complaint lacks any allegation that the challenged awards (or executive compensation generally) were excessively large or in any way out of line in comparison with the leaders of companies of similar size and complexity. Nor does Plaintiff plead facts showing that the challenged awards were devoid of a legitimate corporate purpose, much less that the decisions were "egregious or irrational" or an "unconscionable" waste of corporate assets. *See White*, 783 A.2d at 554; *Brehm*, 746 A.2d at 263. To the contrary, undisputedly, the equity awards were offered in the interest of retaining Mr. Healy's services as CEO, and as part of the initial recruitment of Mr. Moses as CFO.

### C.      The Complaint Fails to State an Unjust Enrichment Claim (Count III)

Plaintiff fares no better with his claim that Messrs. Healy and Moses were unjustly enriched as a result of the challenged awards. To state a claim for unjust enrichment, a plaintiff must allege facts demonstrating that (i) each defendant was enriched, (ii) the company was impoverished, (iii) a relation between the enrichment and the loss, (iv) the absence of a justification, and (v) the absence of a remedy provided by law. *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010); *see also In re Lear*, 967 A.2d 640, 657 n.73 (Del. Ch. 2008) (Delaware law requires the *absence* of justification for the "transfer that enriches one party and impoverishes the other"). Plaintiff supports his unjust enrichment claim with only generic allegations that Messrs. Healy and Moses "have been unjustly enriched at the expense and to the detriment of the Company" and that it would be "unconscionable" for them "to retain the benefits of the awards that were granted in plain violation of the Stock Plan." Compl. ¶¶ 84-85. Other than these conclusory labels, however, Plaintiff pleads neither facts explaining how the mere receipt of such awards by Messrs. Healy and Moses was "unjust," nor any facts showing

that the awards were at the expense of EnerNOC.  *See Twombly*, 550 U.S. at 55 (conclusions and labels do not suffice to state a claim).

More fundamentally, Plaintiff does not (and cannot) plead that the challenged awards lacked justification.  As set forth above, the challenged stock awards comported with the Plan and governing regulations and were supported by a valid and legitimate purpose: to acquire and retain valued high-level executives.

### D.  Plaintiff's Purported Class Action Claim for Breach of the Duty of Candor Is Moot, and In Any Event Fails as a Matter of Law (Count IV)

Finally, Plaintiff fares no better asserting a direct claim that Directors breached their "fiduciary duty of candor" in connection with the 2013 Proxy because the Proxy purportedly "fail[ed] to disclose that the Board granted Healy and/or Moses more shares than allowed under the Stock Plan" in 2010, 2012, and 2013.  Compl. ¶ 45.  This claim fails, however, because the Board disclosed the timing and amount of the challenged awards each year in Company proxies, as well as the Plan language itself.  *See supra* at 4-5.  This gave shareholders all relevant information concerning the grants and the Plan.

In any event, EnerNOC's May 10, 2013 Proxy supplement moots the claim.  That document reiterated the timing and amounts of the challenged grants and disclosed this litigation, including Plaintiff's (misguided) assertion that the awards violated the 130,000 share limitation of the Plan.  As a result, Plaintiff's duty of candor claim should be dismissed.

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint with prejudice pursuant to Federal Rules 23.1 and/or 12(b)(6), and grant Defendants such other and further relief as the Court deems just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


_/s/ D. McKinley Measley_
William M. Lafferty (#2755)

OF COUNSEL:                          D. McKinley Measley (#5108)
                                     1201 N. Market Street
Jeffrey B. Rudman                    P.O. Box 1347
Andrea J. Robinson                   Wilmington, DE  19899-1347
Timothy Perla                        (302) 658-9200
Bradley M. Baglien                   wlafferty@mnat.com
Brian Driscoll                       dmealsey@mnat.com
WILMER CUTLER PICKERING                 _Attorneys for Defendants_
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel:  (617) 626-6000

August 30, 2013