# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LEI WEI, derivatively on behalf ENERNOC, INC. and individually on behalf of himself and all other similarly situated shareholders of ENERNOC, INC., <br><br> Plaintiff, <br><br> vs. <br><br> TIMOTHY G. HEALY, NEIL MOSES, DAVID B. BREWSTER, ARTHUR W. COVIELLO, JR., RICHARD DIETER, TJ GLAUTHIER, SUSAN F. TIERNEY, JAMES BAUM, PETER GYENES, ADAM GROSSER, and JAMES L. TURNER, <br><br> Defendants, <br><br> -and- <br><br> ENERNOC, INC., a Delaware Corporation, <br><br> Nominal Defendant. | C.A. No. 13-cv-766-GMS <br><br><br><br><br> **JURY TRIAL DEMANDED** |

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

October 18, 2013

*Of Counsel:*

LEVI & KORSINSKY LLP
Eduard Korsinsky
Steven J. Purcell
30 Broad Street, 24th Floor
New York, New York 10004
Tel: (212) 363-7500

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDINGS ............................................................................. 1

SUMMARY OF ARGUMENT ................................................................................................... 1

FACTUAL BACKGROUND ...................................................................................................... 2

    I.      EnerNOC's Amended and Restated 2007 Employee, Director, and Consultant Stock Plan ........................................................................................................................ 3

    II.     The Awards to Healy and Moses ............................................................................ 4

ARGUMENT ............................................................................................................................. 4

    I.      The Awards to Healy and Moses Exceeded An Unambiguous Limitation In EnerNOC's Shareholder-Approved Plan. ................................................................. 5

    II.     Plaintiff Adequately Alleges Demand Futility Under *Aronson*. .................................. 8

          A.     Demand Is Excused Under the Second Prong of *Aronson* Because the Board's Decision To Grant the Excess Awards Could Not Have Been a Valid Exercise of Business Judgment. ........................................................................................ 9

          B.     Demand Is Excused Under the First Prong of *Aronson* Because the Board Faces A Substantial Risk of Liability. ................................................................. 13

    III.    All of Plaintiff's Claims Have Been Sufficiently Alleged......................................... 15

    IV.    Plaintiff's Claims Concerning the 2010 Award Are Timely. ..................................... 18

CONCLUSION ........................................................................................................................ 20

# TABLE OF AUTHORITIES

## Cases

*Abrams v. Wainscott*,
2012 U.S. Dist. LEXIS 121425 (D. Del. Aug. 21, 2012) ........................................................... 12

*Am. Int'l Grp., Inc. v. Greenberg*,
965 A.2d 763 (Del. Ch. 2009) ..................................................................................................... 5

*Andersen v. State, Dep't of Admin. Servs.*,
1992 Del. LEXIS 263 (Del. July 7, 1992) .................................................................................. 6

*Aronson v. Lewis*,
473 A.2d 805 (Del. 1984) ................................................................................................... passim

*Beard Research, Inc. v. Kates*,
8 A.3d 573 (Del. Ch. 2010) ....................................................................................................... 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................................................... 4

*Brehm v. Eisner*,
746 A.2d 244 (Del. 2000) ........................................................................................................... 8

*Britton v. Parker*,
2009 U.S. Dist. LEXIS 87829 (D. Colo. Sept. 23, 2009) ......................................................... 17

*California Public Employees' Retirement System v. Coulter*,
2002 Del. Ch. LEXIS 144 (Del. Ch. Dec. 18, 2002) ...................................................... 10, 11, 12

*Conrad v. Blank*,
940 A.2d 28 (Del. Ch. 2007) ............................................................................................... 13, 14

*Dutton v. Harris Stratex Networks*,
270 F.R.D. 171 (D. Del. 2010) .................................................................................................... 4

*Emerald Partners v. Berlin*,
787 A.2d 85 (Del. 2001) ............................................................................................................ 14

*Freedman v. Redstone*,
2013 U.S. Dist. LEXIS 98924 (D. Del. July 16, 2013) ............................................................. 12

*Halpert v. Zhang*,
2013 U.S. Dist. LEXIS 111565 (D. Del. Aug. 1, 2013) .............................................. 2, 10, 11, 12

*In re Citigroup Inc. S'holder Derivative Litig.*,
964 A.2d 106 (Del. Ch. 2009) ............................................................................................. 13, 15

*In re eBay, Inc., Derivative Litig.*,
2011 U.S. Dist. LEXIS 99245 (D. Del. Sept. 2, 2011) .............................................................. 15

*In re Goldman Sachs Group, Inc. S'holder Litig.*,
2011 Del. Ch. LEXIS 151 (Del. Ch. Oct. 12, 2011) ................................................................. 15

*In re Tyson Foods, Inc. Consol. S'holder Litig.*,
2007 Del. Ch. LEXIS 120 (Del. Ch. Aug. 15, 2007)........................................ 17, 18, 19

*In re Walt Disney Co. Derivative Litig.*,
825 A.2d 275 (Del. Ch. 2003) .................................................................................... 9

*Jackson Nat'l Life Ins. Co. v. Kennedy*,
741 A.2d 377 (Del. Ch. 1999) .................................................................................. 16

*Levine v. Smith*,
591 A.2d 194 (Del. 1991) .......................................................................................... 18

*Lillis v. AT&T Corp.*,
2007 Del. Ch. LEXIS 102 (Del. Ch. July 20, 2007) ..................................................... 6

*Nymex S'holder Litig. v. New York Mercantile Exch., Inc.*,
2009 Del. Ch. LEXIS 176 (Del. Ch. Sept. 30, 2009) ............................................... 15

*Rales v. Blasband*,
634 A.2d 927 (Del. 1993) .......................................................................................... 13

*Reid v. Spazio*,
970 A.2d 176 (Del. 2009) .......................................................................................... 18

*Ryan v. Gifford*,
918 A.2d 341 (Del. Ch. 2007)............................................................................. passim

*Sanders v. Wang*,
1999 Del. Ch. LEXIS 203 (Del. Ch. Nov. 8, 1999)............................................. passim

*Schock v. Nash*,
732 A.2d 217 (Del. 1999) .......................................................................................... 16

*Seinfeld v. Slag*,
2012 Del. Ch. LEXIS 139 (Del. Ch. June 29, 2012) ..................................................... 8

*Seminaris v. Landa*,
662 A.2d 1350 (Del. Ch. 1995)................................................................................... 9

*Sun Microsystems, Inc. v. Versata Enters., Inc.*,
630 F. Supp. 2d 395 (D. Del. 2009)............................................................................. 5

*Sun-Times Media Grp., Inc. v. Black*,
954 A.2d 380 (Del. Ch. 2008)..................................................................................... 6

*Weiss v. Swanson*,
948 A.2d 433 (Del. Ch. 2008)............................................................................. passim

**Statutes**

26 U.S.C. §162(m) ................................................................................................. 6, 7

**Rules**

Fed. R. Civ. P. 12(b)(6)............................................................................................. 2

Fed. R. Civ. P. 23.1 ............................................................................................... 2, 5

Plaintiff Lei Wei ("Plaintiff"), derivatively on behalf of EnerNOC, Inc. ("EnerNOC" or the "Company"), respectfully submits this memorandum of law in opposition to Defendants' Motion to Dismiss. For the reasons stated below, the motion to dismiss should be denied.

## NATURE AND STAGE OF PROCEEDINGS

On May 3, 2013, Plaintiff initiated this derivative action on behalf of EnerNOC, alleging claims for breach of fiduciary duty, waste of corporate assets, and unjust enrichment in connection with a series of equity awards that the Board wrongfully granted Timothy Healy ("Healy"), the Company's Chairman of the Board and Chief Executive Officer, and Neil Moses ("Moses"), the Company's Chief Financial Officer, in excess of an annual share limit in EnerNOC's shareholder-approved Amended and Restated 2007 Employee, Director, and Consultant Stock Plan (the "Plan"), and alleging claims for breach of fiduciary duty in connection with false and misleading statements in the Company's Schedule 14(a) Proxy Statement filed on April 26, 2013 (the "2013 Proxy"). On May 9, 2013, Plaintiff moved for a preliminary injunction to enjoin EnerNOC's annual meeting of shareholders. The next day, the Company filed a supplemental proxy statement with the United States Securities and Exchange Commission ("SEC"), which provided the supplemental disclosures Plaintiff sought through his preliminary injunction. Accordingly, Plaintiff withdrew his motion for a preliminary injunction on May 13, 2013. On August 30, 2013, Defendants moved to dismiss.

## SUMMARY OF ARGUMENT

1.    The plain language of EnerNOC'S shareholder-approved Plan categorically prohibits the Board from granting any employee more than 130,000 shares in any given year. In 2010, 2012 and 2013, the Board granted awards that exceeded this limit. Defendants' various attempts to escape the plain meaning of the Plan all fail. These arguments cannot be reconciled

with what the Board itself represented to shareholders when it sought shareholder approval of the Plan, and the arguments are otherwise internally inconsistent and contrary to law.

2.     Under well-established and recently affirmed Delaware law, Plaintiff was not required to make a demand on the Board, which (repeatedly) exceeded an unambiguous limitation on its authority under the Company's shareholder-approved Plan. Just two months ago, in *Halpert v. Zhang*, this Court denied a motion to dismiss that raised the very same arguments Defendants advance here.

3.     As courts have repeatedly recognized, allegations that are sufficient to establish demand futility under Fed. R. Civ. P. 23.1 are necessarily sufficient to state a claim under the less exacting standard of Fed. R. Civ. P. 12(b)(6). Accordingly, because he has properly alleged demand futility, Plaintiff has also necessarily stated a claim for breach of fiduciary duty, unjust enrichment and waste.

4.     Plaintiff's challenge to the 2010 Award to Healy is not barred by laches. Defendants fail to establish prejudice or any other element of this affirmative defense. Moreover, even if a time bar might otherwise apply, tolling doctrines save Plaintiff's claims as a matter of equity. Courts in analogous cases have recognized that fiduciaries such as Defendants cannot first mislead shareholders about their actions and then invoke statute of limitations in order to avoid being held accountable for their misconduct once it has been uncovered.

## FACTUAL BACKGROUND

EnerNOC, a Delaware corporation headquartered in Massachusetts, is a provider of energy management applications, services, and products to commercial, institutional, and

industrial end-users. (¶ 11.)[1] At the time the Complaint was filed, the EnerNOC board of directors (the "Board") consisted of eight members: defendants Healy, James Baum ("Baum"), David B. Brewster ("Brewster"), Arthur W. Coviello, Jr., ("Coviello"), Richard Dieter ("Dieter"), TJ Glauthier ("Glauthier"), Peter Gyenes ("Gyenes"), and Susan F. Tierney ("Tierney") (collectively, the "Current Board").[2] (¶¶ 12-19.) Defendant Moses is the Company's Chief Financial Officer. (¶ 22.) Defendants Healy and Moses received the equity awards challenged in this case. (¶¶ 3, 32, 35, 38-39.)

## I.   EnerNOC's Amended and Restated 2007 Employee, Director, and Consultant Stock Plan

In 2007, the Board adopted and the Company's shareholders approved EnerNOC's Plan, which provides for grants of stock options and other stock-based awards to the Company's employees, directors, and consultants. (¶¶ 25, 26.) The Plan is ultimately administered by the Board, which administers the Plan through its Compensation Committee . (¶ 29.)

The Plan, as approved by EnerNOC's shareholders, places certain limitations on the Board's authority to grant awards. One of those limitations is Section 4(c), which provides that no individual may receive more than 130,000 shares of EnerNOC stock pursuant to awards

---

[1] All "¶" references are to the Verified Shareholder Derivative and Class Action Complaint ("Complaint") filed on May 3, 2013. *See* D.I. 1.

[2] The composition of the Board has changed during the time period at issue in this action. As such, all references to the "Board" in connection with the fiscal 2010 award are to defendants Dieter, Glauthier, Healy, Brewster, Adam Grosser ("Grosser"), Coviello, James L. Turner ("Turner"), and Tierney. (¶¶ 20-21, 23.) All references to the "Board" in connection with the fiscal 2012 awards are to defendants Dieter, Glauthier, Healy, Brewster, Tierney, and Coviello. (¶ 23.) All references to the "Board" in connection with the February 15, 2013 award to Healy are to defendants Dieter, Glauthier, Healy, Brewster, Tierney, and Coviello. (*Id.*) And, all references to the "Board" in connection with the April 22, 2013 award to Moses and the dissemination of the Company's 2013 Proxy refer to defendants Dieter, Glauthier, Healy, Brewster, Tierney, Coviello, Baum, and Gyenes. (*Id.*) Defendant Tierney retired from the Current Board on May 28, 2013.

during a fiscal year. Specifically, Section 4(c) provides that the Plan's administrator is authorized to: "Determine the number of Shares for which a Stock Right or Stock Rights shall be granted, *provided, however, that in no event shall Stock Rights with respect to more than 130,000 Shares be granted to any Participant in any fiscal year*[.]" (¶ 27 (emphasis added).) A "Stock Right" is defined in Section 1 of the Plan to encompass all possible awards that may be granted under the Stock Plan. (¶ 28 ("Stock Right" is defined as "a right to Shares or the value of Shares of the Company granted pursuant to the Plan—an ISO, a Non-Qualified Option, a Stock Grant or a Stock-Based Award.").)

## II.    The Awards to Healy and Moses

In 2010, the Board granted Healy 100,000 shares of stock options and 50,000 shares of restricted stock under the Plan (the "2010 Award"), in excess of the 130,000 fiscal-year limit. (¶ 32.) In 2012, the Board granted Healy a total of 213,128 shares of restricted stock under the Stock Plan (the "2012 Award"). (¶ 35.) In 2013, the Board granted 170,000 and 160,000 shares of restricted stock to Healy and Moses, respectively, pursuant to the Plan (collectively, the "2013 Awards"). (¶¶ 38-39.) The 2010, 2012 and 2013 Awards (collectively, the "Excess Awards") were recommended by the Compensation Committee and approved by the entire Board. (¶ 30.)

## ARGUMENT

To survive a motion to dismiss, a plaintiff need only plead sufficient factual allegations that, taken as a whole, state a facially plausible claim to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Dutton v. Harris Stratex Networks*, 270 F.R.D. 171, 175 (D. Del. 2010). In considering a motion to dismiss, the court must accept the well-pleaded factual allegations in the complaint as true and draw all reasonable inferences that logically flow from those allegations in

the plaintiff's favor. *Sun Microsystems, Inc. v. Versata Enters., Inc.*, 630 F. Supp. 2d 395, 401-02 (D. Del. 2009); *Am. Int'l Grp., Inc. v. Greenberg*, 965 A.2d 763, 776 (Del. Ch. 2009).

In a derivative action, a plaintiff must allege either that he has made a demand on the board of directors to take a requested action or, if not, state with particularity the reasons for which demand on such directors is futile. Fed R. Civ. P. 23.1.

**I. The Awards to Healy and Moses Exceeded An Unambiguous Limitation In EnerNOC's Shareholder-Approved Plan.**

The Plan expressly prohibits the Board from issuing, as it did, more than 130,000 shares of EnerNOC stock to any individual in a fiscal year. Specifically, Section 4(c) of the Plan provides that the Board is authorized to:

> Determine the number of Shares for which a Stock Right or Stock Rights shall be granted, provided, however, *that in no event shall Stock Rights with respect to more than 130,000 Shares be granted to any Participant in any fiscal year*[.]

(¶ 27 (emphasis added).) By issuing Healy awards covering 150,000 shares, 213,128 shares, and 170,000 shares in 2010, 2012, and 2013, respectively, and Moses an award covering 160,000 shares in 2013, the Board exceeded its authority under Section 4(c). (¶¶ 3, 32, 35, 38-39.)

Seeking to contradict the plain meaning of Section 4(c), Defendants proffer that Section 4(c) only "limits the tax-deductible shares that may be granted per year." (Def. Br. 13.) This distinction finds no support in the Plan. Section 4(c) makes no reference to tax-deductible awards; what it provides is a simple and categorical directive "that *in no event* shall Stock Rights with respect to more than 130,000 Shares be granted to any Participant in any fiscal year." (emphasis added). According to Defendants, this unambiguous language should be taken to mean something quite different than what its plain language indicates, namely "that in no event shall Stock Rights with respect to more than 130,000 *tax-deductible* Shares be granted to any Participant in any fiscal year." Defendants' argument must be rejected because it would in effect

5

constitute a wholesale amendment to the Plan. *See, e.g.*, *Andersen v. State, Dep't of Admin. Servs.*, 1992 Del. LEXIS 263, at *78 (Del. July 7, 1992) (rejecting a proposed contract interpretation that would effectively add a new term to the contract).

Defendants contend that their "interpretation is required because . . . [,] in 2010, EnerNOC shareholders approved an amended and restated stock plan for the sole and express purpose of complying with Section 162(m)" of the Internal Revenue Code (26 U.S.C. §162(m)). (Def. Br. 14.) This assertion is without merit. As an initial matter, Defendants fail to explain why an annual limit on all awards would cause the Plan not to comply with Section 162(m). Second, whatever the reason was for the 2010 re-approval and restatement of the Plan, Section 4(c) and the 130,000 share limit were first included in the Plan *in 2007* and were left *unchanged* in 2010. (*See* Amendment No. 3 to EnerNOC's Form S-1 filed on May 3, 2007, Exhibit 10.14 at 3.) Third, in EnerNOC's Schedule 14(a) Proxy Statement filed on April 26, 2010 (the "2010 Proxy") where the Board sought shareholder re-approval of the Plan, the Board itself described the 130,000 share limit as applying to all awards. Specifically, in the 2010 Proxy, the Board represented to shareholders that under the Plan "[n]o more than 130,000 shares may be granted to any one individual during any one fiscal year." (2010 Proxy at 60.) The fact that outside the context of this litigation Defendants have interpreted Section 4(c)'s 130,000 share limit as applying to all awards speaks for itself in terms of the credibility of the contrary interpretation they offer now. *See, e.g.*, *Sun-Times Media Grp., Inc. v. Black*, 954 A.2d 380, 398-99 (Del. Ch. 2008) (finding that defendants' past interpretation of a bylaw provision, one that occurred prior to the start of the litigation, was "compelling" evidence as to meaning of that provision); *Lillis v. AT&T Corp.*, 2007 Del. Ch. LEXIS 102, at *58-59 (Del. Ch. July 20, 2007) (finding a past letter

where defendant agreed with plaintiff's interpretation of a term in a stock option plan "significant" in determining that term's meaning).

Defendants also argue that the 130,000 share limit only applies to tax-deductible shares due to the proviso at the end of Section 4 of the Plan, which states that all interpretations should be made "in accordance with Section 162(m)." (Def. Br. 14.) This proviso cannot support the weight Defendants place upon it. For starters, Defendants omit the most important language of the proviso, which states that all interpretations shall be made "in the context of preserving the tax status . . . in accordance with Section 162(m) of the Code for all other Stock Rights to which the [Compensation] Committee has determined Section 162(m) is applicable." (Plan, § 4.3.) In other words, all the proviso says is that *if* the Compensation Committee intends for an award to be tax-deductible under Section 162(m), all interpretations concerning the award should be made in a manner enabling the award to comply with Section 162(m) so as to retain the award's tax-deductible status.[3]

Given what the proviso actually says, Defendants' argument -- that the proviso broadly invests the Board with the right to interpret the 130,000 share limit in whatever way it wants (including, if they so choose, "interpreting" it out of existence for certain awards) -- fails for two fundamental reasons: (1) Defendants whole point is that the Board did *not* intend for the Excess Awards to be tax-deductible under Section 162(m) (Def. Br. 14) and so the proviso (which applies only for awards "to which the [Compensation] Committee has determined Section 162(m) is applicable") does not even come into play; and (2) even if the proviso is applicable, Defendants fail to explain how their interpretation would "preserve" the Excess Award's

---

[3] This makes good sense. Due to the complexity of Section 162(m), a Company does not want to risk losing out on the ability to take tax deductions for an award it intended to be tax-deductible simply because it turns out there is some arguable interpretation of Section 162(m)'s complex web of regulations that would cause the award to fail to qualify for the deduction.

compliance with Section 162(m) (something that is course impossible considering that the Excess Awards were never intended to comply with Section 162(m) in the first place).[4]

Defendants conclude with the peremptory argument that their interpretation of the Plan is "final" and binding because "the Board is empowered to interpret the Plan" and the Board's interpretation of the Plan is "reasonable." (Def. Br. 14.) As described above, the Board's decision to exceed the unambiguous 130,000 share limit is in no way a reasonable interpretation of the Plan. Indeed, this same argument was rejected in *Sanders v. Wang*, 1999 Del. Ch. LEXIS 203 (Del. Ch. Nov. 8, 1999), where the defendants claimed they could disregard an equally plain share limitation because the plan gave the board authority to "interpret and administer" the plan and because the purpose of the plan and the shareholders' intent in enacting it would be frustrated by "a strict reading" of the share limit. *Id.* at *29-30. The court was not persuaded and held that the board's power to interpret the plan could not be construed as authority to exceed or override an unambiguous share limit. *Id.*

## II.    Plaintiff Adequately Alleges Demand Futility Under *Aronson*.

Where a plaintiff challenges a board's action or its conscious decision not to take action, demand upon that board will be excused if the plaintiff alleges facts raising a reasonable doubt

---

[4] Defendants argue that interpreting the Plan according to its plain meaning would somehow "not comport with the fundamental proposition of Delaware law that the Board manages the company, including setting appropriate compensation." (Def. Br. 15.) This makes no sense. Although Defendants repeatedly attempt to reframe this case as a wholesale challenge to the Board's general decision-making process regarding awards (*Id.* at 11, 14-15), Plaintiff is not challenging the Board's general authority to issue executive compensation, and has instead alleged that, by granting Healy and Moses the awards that exceeded what the Plan allows, the Board breached its contract with shareholders (¶¶ 1-5, 73-74.), which it simply has no authority to do. *See Sanders*, 1999 Del. Ch. LEXIS 20, at *14-15. In this respect, Defendants' citations to *Seinfeld v. Slag*, 2012 Del. Ch. LEXIS 139 (Del. Ch. June 29, 2012) and *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000), completely miss the mark because neither case involved the violation of an express and unambiguous provision of a shareholder-approved compensation plan. *See Brehm*, 746 A.2d at 248; *Seinfeld*, 2012 Del. Ch. LEXIS 139, at *34.

that either (1) a majority of the board was disinterested or independent or (2) the transaction was a product of the board's valid exercise of business judgment. *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984); *Seminaris v. Landa*, 662 A.2d 1350, 1354 (Del. Ch. 1995) ("If a derivative plaintiff can demonstrate a reasonable doubt as to the first or second prong of the *Aronson* test, then she has demonstrated that demand would have been futile." (citation omitted)). The parties agree that *Aronson* states the applicable test for demand futility in this case.[5] (Def. Br. 8.)

### A.   Demand Is Excused Under the Second Prong of *Aronson* Because the Board's Decision To Grant the Excess Awards Could Not Have Been a Valid Exercise of Business Judgment.

Under the second prong of *Aronson*, a plaintiff may rebut the presumption that the board's decision is entitled to the protection of the business-judgment rule by raising a reason to doubt whether the board's action was taken on an informed basis or honestly and in good faith. *In re Walt Disney Co. Derivative Litig.*, 825 A.2d 275, 286 (Del. Ch. 2003).

As discussed below, it is well-settled that where a board exceeds an unambiguous limitation on its authority under a shareholder-approved compensation plan, the business judgment rule does not apply and demand on such a board will be deemed futile. This case involves precisely that situation. In approving the Plan, EnerNOC shareholders granted the Board authority to issue equity awards under the Plan subject to the Plan's terms and limitations, including Section 4(c). In granting Healy awards covering more than 130,000 shares in 2010, 2012, and 2013, and Moses an award covering 160,000 shares in 2013, the Board plainly exceeded the authority granted to it by shareholders.

---

[5] *Aronson* applies because each of the Excess Awards was "recommended by the compensation committee and approved by the board of directors." (¶ 30.) Each member of the Current Board approved the April 22, 2013 Award to Moses, and a majority of the Current Board (six directors) approved each of the challenged Excess Awards. (¶¶ 23, 30.)

A number of cases establish that demand will be deemed futile where plaintiff properly alleges that a board of directors is alleged to have exceeded its authority under a shareholder-approved compensation plan. The most recent holding to this effect was issued by Judge Robinson of this Court in *Halpert v. Zhang*, 2013 U.S. Dist. LEXIS 111565 (D. Del. Aug. 1, 2013), discussed in detail below. Judge Robinson relied extensively on the seminal case of *Sanders v. Wang*, where plaintiffs alleged that the board of directors had awarded stock to certain officers in amounts that exceeded the express limits in of a shareholder-approved stock plan. 1999 Del. Ch. LEXIS 203, at *2. The Court of Chancery held that the directors' failure to honor an unambiguous provision of a shareholder-approved compensation plan *ipso facto* established demand futility under the second prong of *Aronson*:

> [T]he plaintiffs have sufficiently alleged facts which, taken as true, show that the . . . board violated an express [plan] provision limiting the number of shares they were authorized to award. . . . I find the plaintiffs have sufficiently pleaded facts which cast doubt that the board's alleged acts could be the result of a valid exercise of business judgment. *Id.* at *14-15.

Similarly, in *California Public Employees' Retirement System v. Coulter*, the plaintiff challenged a board's repricing of stock options as a violation of the company's shareholder-approved stock option plan. 2002 Del. Ch. LEXIS 144 (Del. Ch. Dec. 18, 2002). The court concluded that demand was excused under the second prong of *Aronson*:

> [T]he amended complaint alleges that the underlying stock option plan does not permit repricing of options regardless of the technicalities of how repricing is accomplished. . . . It appears undisputed that the repricings were conducted under the options plan without additional shareholder approval. . . . Thus, plaintiff alleges with particularity that repricing of directors' options in 1997 and 1999 was *ultra vires*. Any action of the board that falls outside the rather broad scope of its authority is not entitled to the protection of the business judgment rule and demand is excused. *Id.* at *39-40.

And, in *Weiss v. Swanson*, the Court of Chancery again excused demand where directors exceeded their authority under a stockholder-approved compensation plan. 948 A.2d 433, 441

10

(Del. Ch. 2008). In so doing, the court made an observation that is particularly resonant in light of the overall theme of Defendants' motion to dismiss. Specifically, the *Weiss* court stated that although compensation decisions are typically protected by the business judgment rule, "the rule applies to the directors' grants of options pursuant to a stockholder-approved plan *only* when the terms of the plan at issue are adhered to." *Id.* (emphasis added).

Just two months ago, in *Halpert*, this Court had occasion to address allegations that a board had exceeded an express limit on the number of stock options that an individual participant could receive pursuant to a company's shareholder-approved compensation plan. 2013 U.S. Dist. LEXIS 111565, at *2-3. In holding that demand was excused in this situation, this Court reasoned that demand must be excused where "the challenged transaction was such a clear and undisputed violation that the violation, alone, created a reasonable doubt that the board acted without knowledge." *Id.* at *16.

Apparently unable to distinguish these relevant authorities, Defendants ignore *Coulter* and *Weiss* altogether. And although Defendants acknowledge the existence of *Sanders* and *Halpert*, they do so only as part of their secondary argument -- failure to state a claim -- and even then only in a footnote. Remarkably, Defendants do not discuss *Sanders* at all in their demand futility argument. (Def. Br. 17 n.9.) In any event, Defendants' attempt to distinguish *Sanders* based on the ground that the present action involves a "sub-limitation" (*Id.* (emphasis omitted)) makes no sense; the dispositive fact in *Sanders* is the same as in this action -- a board's violation of an unambiguous share limit in a shareholder-approved compensation plan. *See Sanders*, 1999 Del. Ch. LEXIS 203, at *14-15. Defendants do not explain why the *Sanders* analysis would change depending on whether the share limit is an annual or an aggregate limit. Either way, it is

an unambiguous limit on the board's authority to issue shares under a shareholder-approved plan.[6]

Defendants argue that the allegations of the Complaint are insufficient to establish demand futility without "any particularized facts suggesting that the Board intentionally violated the Plan in granting the challenged awards." (Def. Br. 12.) This argument misapprehends the law as well as the nature of Plaintiff's allegations. *Sanders*, 1999 Del. Ch. LEXIS 203, at *13-14 (granting judgment on the pleadings to plaintiff based on board's violation of shareholder-approved plan in absence of specific allegations of intent); *Coulter*, 2002 Del. Ch. LEXIS 144, at *39-40; *Weiss*, 948 A.2d at 441. Moreover, because the limit is unambiguous, that alone raises an inference that the violation was intentional, just as Judge Robinson concluded in *Halpert*. 2013 U.S. Dist. LEXIS 111565, at *16.[7]

---

[6] Defendants also argue that it is significant somehow that "the board [in *Halpert*] exceeded the 100,000 share limitation by granting 750,000 shares – a 650,000 share difference – in a single year, as opposed to the 173,128 shares over four years in this case." (Def. Br. 17 n.9.) Attempting to distinguish *Halpert* on this basis is absurd; Defendants' violation of the 130,000 share limit is not excused simply because another board's violation of its own shareholder-approved plan may have involved more shares.

[7] Defendants' reliance on *Abrams v. Wainscott*, 2012 U.S. Dist. LEXIS 121425 (D. Del. Aug. 21, 2012) is misplaced. *Abrams* involved alleged violations that concerned complex provisions of the federal tax code. *Id.* at *2. In finding that plaintiff failed to allege "knowledge and intent," the Court distinguished the case from *Ryan* and *Sanders*, both of which, like here, involved clear violations of an express provision in the applicable stock option plan from which the Court could infer intent. *Id.* at *9. Similarly, Defendants' reliance on *Freedman v. Redstone*, 2013 U.S. Dist. LEXIS 98924 (D. Del. July 16, 2013), is misplaced. *Freedman* and *Halpert* were decided within approximately two weeks of each other by Judge Sue L. Robinson. *Compare Halpert*, 2013 U.S. Dist. LEXIS 111565 (D. Del. Aug. 8, 2013), with, *Freedman*, 2013 U.S. Dist. LEXIS 98924 (D. Del. July 16, 2013). In *Halpert*, Judge Robinson rejected the defendants' argument that *Freedman*, which did not involve the alleged violation of a share limit, supported their argument that their violation of the shareholder-approved plan was a valid business judgment under *Aronson*. *Halpert*, 2013 U.S. Dist. LEXIS 111565, at *15. Judge Robinson explained that the key difference between cases such as *Sanders* and *Halpert*, on the one hand, and *Freedman* on the other was that the former involved a clear limit on the board's authority -- i.e., a share limit --

Accordingly, Plaintiff has pleaded particularized facts demonstrating that the Board has exceeded the authority conferred on it by EnerNOC's shareholders, thereby excusing demand.

### B. Demand Is Excused Under the First Prong of *Aronson* Because the Board Faces A Substantial Risk of Liability.

As explained above, demand under the first prong of *Aronson* is excused where a plaintiff raises a reasonable doubt that a majority of the board was disinterested or independent. *Aronson*, 473 A.2d at 814. The requisite doubt to find a director interested may be raised by well-pleaded facts showing that a director faces a substantial likelihood of personal liability. *See Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993); *Conrad v. Blank*, 940 A.2d 28, 37 (Del. Ch. 2007). Where directors are exculpated from liability for negligent conduct, a substantial threat of personal liability may only be found if the plaintiff pleads a non-exculpated claim, such as bad faith, against the directors based on particularized facts. *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 124-25 (Del. Ch. 2009).[8]

Here, because each member of the Current Board approved at least one of the Excess Awards, each member faces a substantial likelihood of liability. (¶¶ 23, 30.) In *Conrad* and *Ryan v. Gifford*, 918 A.2d 341 (Del. Ch. 2007), the Court of Chancery concluded that allegations that a director approved compensation grants in violation of a shareholder-approved plan successfully established a substantial likelihood of liability with respect to that director, rendering her incapable of properly exercising her independent and disinterested business judgment in

---

such that a violation of that limit "alone, gives rise to a reasonable doubt that the challenged grants were a valid excuse of business judgment." *Id.* at *16.

[8] Defendants do not contest that both Healy and Brewster are interested and not independent, as Plaintiff alleged. (¶¶ 58-59.)

responding to a demand. *Conrad*, 940 A.2d, at 38-41; *Ryan*, 918 A.2d at 355-56. Because a majority of the Current Board (six directors) approved the Excess Awards, demand is excused as to the Current Board.

Defendants contend that the exculpation clause in EnerNOC's charter precludes a finding that Defendants face a substantial likelihood of liability for violating the Plan. (Def. Br. 10 n.3, 12-13, 16-18.) However, an exculpation clause will not support dismissal unless the sole conceivable basis of liability is a breach of the duty of care. *Emerald Partners v. Berlin*, 787 A.2d 85, 90 (Del. 2001). That is not the case here. The existence of well-pled allegations that the Board violated an unambiguous shareholder-approved plan implicates a breach of the duty of loyalty and dismissal is precluded as a matter of law. *Sanders*, 1999 Del. Ch. LEXIS 203, at *33 ("What remains unclear, subject to further proof and incapable of resolution at this stage of the proceedings, is the nature of the breach of fiduciary duty[.]"); *Conrad*, 940 A.2d at 40 (declining to determine the nature of the directors' violation of an express term of a shareholder-approved plan on a motion to dismiss).

Similarly unavailing is Defendants' argument that Plaintiff has not alleged with particularity that the Board "knowingly" violated the Plan. (Def. Br. 17.) The defendants in *Conrad* and *Ryan* made this same argument, which was rejected on the ground that it is reasonable to infer that board members *know* the basic terms of the plan and the very awards they are handing out under it. *Ryan*, 918 A.2d at 355 n.35 (Del. Ch. 2007) (holding that plaintiff adequately alleged a "knowing and purposeful violation[]" of the plan, finding it "difficult to understand how a plaintiff can allege that directors backdated options *without* simultaneously alleging that such directors *knew* that the options were being backdated" (emphasis in original)); *Conrad*, 940 A.2d at 40 ("[T]he court concludes that the allegations of the complaint are

sufficient to excuse demand . . . since they raise . . . a reasonable inference that the [board] members acted knowingly in awarding options priced at dates other than the actual dates of the grant.”); *see also Sanders*, 1999 Del. Ch. LEXIS 203, at *13-14 (holding that demand was excused where a plan expressly limited the total number of shares allowed to be issued under a plan and where a board clearly exceeded that limit).

This case is no different. The Court should infer that the Current Board *knew* that the Excess Awards violated the Plan.[9]

## III.   All of Plaintiff's Claims Have Been Sufficiently Alleged.

The elements for a claim of breach of fiduciary duty are: (1) that a fiduciary duty existed and (2) that the defendant breached that duty. *Beard Research, Inc. v. Kates*, 8 A.3d 573, 601 (Del. Ch. 2010). Here, the same facts demonstrating that demand was excused because the Board's violation of the Plan could not have been a valid exercise of business judgment also provide a sufficient basis for sustaining Plaintiff's breach of fiduciary duty claims. “[W]here [the] plaintiff alleges particularized facts sufficient to prove demand futility under the second prong of *Aronson*, that plaintiff *a fortiori* rebuts the business judgment rule for the purposes of surviving a motion to dismiss pursuant to Rule 12(b)(6).” *Weiss*, 948 A.2d at 448 (citing *Ryan*, 918 A.2d at 357). Additionally, as the standard for pleading demand futility under Rule 23.1 is more stringent than the standard under Rule 12(b)(6), a “complaint that survives a motion to dismiss pursuant to Rule 23.1 will also survive a 12(b)(6) motion to dismiss, assuming that it otherwise contains sufficient facts to state a cognizable claim.” *In re Citigroup Inc.*, 964 A.2d at

---

[9] In seeking a contrary result, Defendants rely on three cases, none of which involves a violation of a shareholder-approved compensation plan. *See In re Goldman Sachs Group, Inc. S'holder Litig.*, 2011 Del. Ch. LEXIS 151, at *4 (Del. Ch. Oct. 12, 2011); *In re eBay, Inc., Derivative Litig.*, 2011 U.S. Dist. LEXIS 99245, at *1-2 (D. Del. Sept. 2, 2011); *Nymex S'holder Litig. v. New York Mercantile Exch., Inc.*, 2009 Del. Ch. LEXIS 176, at *2 (Del. Ch. Sept. 30, 2009).

139.

Plaintiff has also pleaded sufficient facts to establish a claim for unjust enrichment, which is "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Schock v. Nash*, 732 A.2d 217, 232-33 (Del. 1999) (internal quotation marks omitted). The existence of an unjust enrichment claim follows logically from a properly pled breach of fiduciary duty claim. *Jackson Nat'l Life Ins. Co. v. Kennedy*, 741 A.2d 377, 394 (Del. Ch. 1999) ("Having pleaded sufficiently the allegations [of] breach of fiduciary duty . . . it is axiomatic that Plaintiffs have likewise pleaded sufficiently the allegations that Defendants were enriched by their actions [and it is therefore] likely they will also be able to prove that neither [Defendant] can retain any benefit resulting from the disputed transaction."); *Ryan*, 918 A.2d at 361 (retention of challenged options constituted unjust enrichment at the expense of the corporation); *Weiss*, 948 A.2d at 449-50 (same).

Plaintiff has also pleaded sufficient facts to establish a claim for waste, which exists where there has been an "exchange of corporate assets for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade." *Weiss*, 948 A.2d 450 (citation omitted). Having sufficiently pled that the Board exceeded its authority under the Plan, Plaintiff has necessarily pled that these grants did not benefit EnerNOC and therefore constitute waste. *Sanders*, 1999 Del. Ch. LEXIS 203, at *32 ("Having concluded as a matter of law that the Board exceeded its authority, the alleged acts clearly call into question whether the transaction as consummated could have benefited [the company].").

As for Plaintiff's disclosure claims, in response to the Complaint and Plaintiff's Motion for Preliminary Injunction, on May 10, 2013, Defendants filed a supplemental disclosure

mooting Plaintiff's disclosure claims. Ironically, Defendants now attack the very claims they decided to moot, arguing that the claims were not meritorious and that the supplemental disclosure did not provide new material information to shareholders. (Def. Br. 20.) Defendants offer no explanation as to why, if the disclosure claims were meritless, they undertook the time and expense of filing a supplemental disclosure in the proxy seven days after Plaintiff filed suit and one day after Plaintiff moved for a preliminary injunction. Nor do they explain why they decided to provide shareholders with information that was, by their own lights, immaterial.

Contrary to Defendants' argument, a director's violations of a shareholder-approved compensation plan is material to shareholders, particularly in deciding whether to approve a plan or reelect board members. *See*, *e.g.*, *Weiss*, 948 A.2d at 443 (concluding that the directors' practice of granting options in violation of shareholder-approved stock plans was material information for a shareholder in "deciding whether to approve the option plans or to reelect board members"); *In re Tyson Foods, Inc. Consol. S'holder Litig.*, 2007 Del. Ch. LEXIS 120, at *11 (Del. Ch. Aug. 15, 2007) (nature of a scheme involving "spring-loading" of stock options granted to company insiders was material information); *Britton v. Parker*, 2009 U.S. Dist. LEXIS 87829, at *26 (D. Colo. Sept. 23, 2009) ("It does not strain credulity to believe that an investor deciding whether to approve an Incentive Plan would likely consider it important to know that the company's Directors had previously disregarded and abused a similar Incentive Plan. Nor can the Court say that a reasonable shareholder would consider such conduct by a Director unimportant when considering whether to re-elect that Director to another term."). Accordingly, the disclosure claims were well-plead and, indeed, well-taken.

IV.     **Plaintiff's Claims Concerning the 2010 Award Are Timely.**

Defendants argue that a three-year statute of limitations applies to Plaintiff's claims (Def.

Br. 7.) They are incorrect. The equitable doctrine of laches applies here. *Reid v. Spazio*, 970 A.2d

176, 183 (Del. 2009) ("Although both laches and statutes of limitation operate to time-bar suits,

the limitations of actions applicable in a court of law are not controlling in equity."); *Levine v.

Smith*, 591 A.2d 194, 200 (Del. 1991) ("A shareholder derivative suit is a uniquely equitable

remedy[.]"). Moreover, laches is an affirmative defense that Defendants must prove. The

Delaware Supreme Court requires Defendants to establish three elements: (1) knowledge by the

claimant; (2) unreasonable delay in bringing the claim, and; (3) resulting prejudice to the

defendant. *Reid*, 970 A.2d at 182-183.

Here, Defendants do not even suggest a basis to claim prejudice, which disposes of the

defense altogether. In any event, even if the Court looked at the analogous statute of limitations,

the three-year period is subject to two tolling doctrines in this case. Courts will toll the time-

period "when a defendant has fraudulently concealed from a plaintiff the facts necessary to put

him on notice of the truth." *In re Tyson Foods, Inc.*, 919 A.2d at 585. Under this doctrine, a

plaintiff must allege an affirmative act of "actual artifice" by the defendants that either prevented

the plaintiff from gaining knowledge of the material facts or led the plaintiff away from the truth.

*Id.* Courts also toll the time under the doctrine of equitable tolling, while a plaintiff has

reasonably relied upon the competence and good faith of a fiduciary. *Id.*, 919 A.2d at 585.

Fraudulent tolling applies because "[i]naccurate public representations as to whether

directors are in compliance with shareholder-approved stock option plans [in public disclosures]

constitute fraudulent concealment of wrongdoing sufficient to toll the statute of limitations."

*Ryan*, 918 A.2d at 360; *see also In re Tyson Foods, Inc.*, 919 A.2d at 591 (disclosures that stock

options grants were issued at market rates was an act of "actual artifice" sufficient to warrant tolling). Here, Defendants falsely represented that the 2010 Award complied with the Plan, which likewise constitutes an "actual artifice."[10]

Equitable tolling also applies because shareholders are entitled to rely upon the "competence and good faith" of directors in properly administrating a compensation plan. *Weiss*, 948 A.2d at 452 ("Weiss was 'entitled to rely upon the competence and good faith of those protecting [his] interests,' including with regard to administration of the plans. Therefore, the application of equitable tolling is appropriate." (quoting *In re Tyson Foods, Inc.*, 919 A.2d 563, 590 (Del. Ch. 2007)).

The critical question in the tolling analysis is when the plaintiff could have discovered the corporate injury through exercise of reasonable diligence. *See, e.g.*, *Weiss*, 948 A.2d at 452; *In re Tyson Foods, Inc.*, 919 A.2d at 585, 591. Delaware law is clear that a shareholder is not on inquiry notice where he would have to comb through multiple documents in order to detect a corporate wrongdoing. In *Weiss*, for example, the plaintiff alleged that the director defendants had stealthily engaged in both spring loading and bullet dodging of options in violation of a stockholder-approved plan. 948 A.2d at 439-40. After finding that plaintiff's claims would be equitably tolled, the Court held that the plaintiff was not on inquiry notice because "[i]t would be inappropriate to infer, as the defendants argue, that Weiss was on inquiry notice of his claims simply because he could have pieced together the alleged practice of timing option grants from publicly available information.") *Id.* at 452 (citations omitted).

Similarly, in *In re Tyson Foods, Inc.*, which Defendants cite with approval for their

---

[10] *See* Company's Schedule 14(a) Proxy Statement filed on April 26, 2011 at 37 (representing that the 2010 Award was "issued under the [Plan]" and " [s]ubject to the terms of the [Plan]"); Form 4 for Restricted Stock for Healy filed on February 17, 2010 ("award made pursuant to the [Plan]"); Form 4 for Options for Healy filed on February 17, 2010 (same).

laches argument (Def. Br. 7), the court, after holding that tolling was appropriate, found that the plaintiffs were not on inquiry notice "simply because some relevant information was in the public domain." 919 A.2d at 590-91. The Court explained that "it would be manifest injustice" for it to conclude that reasonable diligence required plaintiff to go to great lengths in order to ferret out wrongdoing "concealed by those whose duty is to guard the interests of the investor." *Id.* at 591.

It would not be reasonable to charge Plaintiff with contemporaneous knowledge that the 2010 Award was improper. Requiring Plaintiff to rummage through various different SEC filings by the Company and cross-reference them against all of the Forms 4 filed by individuals who received awards under the Plan goes well beyond any reasonable notion of what should be expected of a shareholder, particularly where, as here, Plaintiff was entitled to rely on the presumed good faith of his fiduciary, the Board, which was representing its full compliance with the Plan. Ironically, Defendants unwittingly confirm this very point. In arguing that Plaintiff was on notice of the wrongdoing, Defendants point to the 2010 Proxy and "an SEC Form 4 filing." (Def. Br. 7.) In fact, the 2010 Award is spread across two 2010 Forms 4 and review of only one of them would not reveal any Plan violation.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' motion to dismiss in its entirety. In the alternative, Plaintiff respectfully requests leave to amend the Complaint to clarify and supplement the relevant allegations therein.

Dated:      October 18, 2013                    Respectfully submitted,

                                               FARNAN LLP


                                               /s/ Brian E. Farnan
                                               Brian E. Farnan (Bar No. 4089)
                                               Michael J. Farnan (Bar No. 5165)
                                               919 N. Market Street, 12th Floor
                                               Wilmington, DE 19801
                                               Telephone: (302) 777-0300
                                               Facsimile: (302) 777-0301
                                               bfarnan@farnanlaw.com
                                               mfarnan@farnanlaw.com


*Of Counsel:*

LEVI & KORSINSKY LLP
Eduard Korsinsky
Steven J. Purcell
30 Broad Street, 24th Floor
New York, New York 10004
Tel: (212) 363-7500