**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| EUGENE BASCH, derivatively on behalf of ENERNOC, INC. and individually on behalf of himself and all other similarly situated shareholders of ENERNOC, INC., <br><br> Plaintiff, <br><br> vs. <br><br> TIMOTHY G. HEALY, NEIL MOSES, DAVID B. BREWSTER, ARTHUR W. COVIELLO, JR., RICHARD DIETER, TJ GLAUTHIER, SUSAN F. TIERNEY, JAMES BAUM, PETER GYENES, ADAM GROSSER, and JAMES L. TURNER, <br><br> Defendants, <br><br> -and- <br><br> ENERNOC, INC., a Delaware Corporation, <br><br> Nominal Defendant. | Civil Action No. 13-cv-766-GMS |

## STIPULATION OF SETTLEMENT AND COMPROMISE

This Stipulation of Compromise and Settlement ("Stipulation") is made and entered into as of August 7, 2014, and is intended to fully, finally, and forever resolve, discharge, and settle all claims that were or could have been brought in the above-captioned action ("the Action") and as set forth in paragraph 2.3 below with respect to the Released Claims. The Parties to this Stipulation are: (i) Eugene Basch, derivatively on behalf of EnerNOC, Inc. and individually on behalf of himself ("Basch" or "Plaintiff"); (ii) defendants Timothy G. Healy, Neil Moses, David B. Brewster, Arthur W. Coviello, Jr., Richard Dieter, TJ Glauthier, Susan F. Tierny, James Baum, Peter Gyenes, Adam Grosser, and James L. Turner ("the Individual Defendants"); and

(iii) nominal defendant EnerNOC, Inc. ("EnerNOC" or "the Company", and together with the Individual Defendants, the "Defendants") (collectively, "the Parties").

### Summary of the Proceedings

A.   On May 3, 2013, Lei Wei, a purported shareholder of the Company filed this derivative and class action complaint in the United States District Court for the District of Delaware against the Defendants.  The complaint asserted derivative claims, purportedly brought on behalf of the Company, for breach of fiduciary duty, waste of corporate assets, and unjust enrichment in connection with certain equity awards (awarded in 2010, 2012, and 2013) that allegedly exceeded what Mr. Wei claimed was an annual limit on per-employee equity grants contained in the Company's Amended and Restated 2007 Employee, Director, and Consultant Stock Plan ("the 2010 Plan").  The complaint also asserted a direct claim, brought on behalf of the plaintiff and a proposed class of the Company's shareholders, alleging the Company's proxy statement filed on April 26, 2013 was false and misleading because it failed to disclose that the equity grants were improper.

B.   On May 10, 2013, in order to moot Plaintiff's claim concerning the April 26, 2013 proxy, EnerNOC filed a supplemental proxy statement providing additional information about historical grants and the Plaintiff's claims concerning those grants.  Defendants deny that the April 26, 2013 proxy was in any way deficient, but acknowledge that the filing of the supplemental proxy provided a benefit to EnerNOC stockholders.

C.   On August 30, 2013, Defendants filed a motion to dismiss the complaint, which was thereafter fully briefed.  Defendants deny all wrongdoing, dispute the merits of Plaintiff's claims and assertions of loss, believe they have meritorious defenses to Plaintiff's claims, deny that they have violated the 2010 Plan, and assert that all equity grants were made in good faith and in furtherance of the best interests of EnerNOC and its stockholders.

D. On May 20, 2014, Plaintiff Eugene Basch filed an assented-to motion to substitute as plaintiff in lieu of Mr. Wei. On May 22, 2014, the Court granted the motion. On May 27, 2014, Mr. Basch filed an Amended Complaint substituting himself as plaintiff and making in substance the same allegations that appeared in Mr. Wei's complaint.

E. On April 28, 2014, the Company filed a proxy statement seeking shareholder approval of the EnerNOC, Inc. 2014 Long-Term Incentive Plan ("the 2014 Plan"). In creating the 2014 Plan, Defendants took into consideration Plaintiff's claims concerning the 2010 Plan.

F. Throughout this process, the Parties also engaged in good faith in informal settlement discussions over a period of several months, including numerous telephone calls and exchanges of email. On June 27, 2014, the Parties appeared for a full-day, in-person mediation before Jed Melnick of JAMS, Inc. After extensive, arm's length negotiations, the Parties reached an agreement-in-principle to settle the Action.

**Plaintiff's Claims and Defendants' Denials of Wrongdoing and Liability**

G. Plaintiff believes that the claims asserted in the Action have merit, but also believes that the settlement set forth below provides substantial and immediate benefits for EnerNOC and its stockholders. In addition to these substantial benefits, Plaintiff and his counsel have considered: (i) the attendant risks of continued litigation and the uncertainty of the outcome of the Action; (ii) the probability of success on the merits; (iii) the inherent problems of proof associated with, and possible defenses to, the claims asserted in the Action; (iv) the desirability of permitting the settlement to be consummated according to its terms; (v) the expense and length of continued proceedings necessary to prosecute the Action through trial and appeals; (vi) the fact that EnerNOC's by-laws exculpate duty of care claims; and (vii) the conclusion of Plaintiff and his counsel that the terms and conditions of the Stipulation are fair, reasonable, and

adequate, and that it is in the best interests of EnerNOC and its stockholders to settle the Action on the terms set forth herein.

        H.        The Individual Defendants maintain that their conduct was at all times proper and in compliance with applicable law and they have denied, and continue to vigorously deny, that they have committed or intended to commit any breaches of their obligations or violations of law arising out of any of the conduct, statements, acts, or omissions alleged in the Action or otherwise.  The Individual Defendants further deny that they breached their fiduciary or any other legal duties.  The Individual Defendants also deny that EnerNOC was harmed by any conduct of the Individual Defendants alleged in the Action.  The Individual Defendants assert that, at all relevant times, they acted in good faith and in a manner they reasonably believed to be in the best interests of EnerNOC and its stockholders.

        I.        Defendants, however, recognize the uncertainty and the risk inherent in any litigation, and the difficulties and substantial burdens, expense, and length of time that may be necessary to defend this proceeding through the conclusion of discovery, summary judgment motions, trial, post-trial motions, and appeals.  Defendants wish to eliminate the uncertainty, risk, burden and expense of further litigation, and to permit the operation of EnerNOC without further distraction and diversion of its directors and executive personnel with respect to the Action.  Defendants have therefore determined to settle the Action on the terms and conditions set forth in this Stipulation and to put the Released Claims to rest finally and forever, without in any way acknowledging any wrongdoing, fault, liability, or damages.

        NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, BY AND AMONG THE PARTIES TO THIS STIPULATION, subject to the approval of the Court pursuant to Fed. R. Civ. Proc. Rule 23.1, that all Released Claims shall be and hereby are

compromised, settled, discontinued, and dismissed with prejudice as to all Released Persons upon the following terms and conditions:

## I. DEFINITIONS

1.1. "Current EnerNOC Stockholder" or "Current EnerNOC Stockholders" means any Person or Persons who are record or beneficial owners of EnerNOC common stock as of the date of this Stipulation, excluding the Individual Defendants, the officers and directors of EnerNOC, members of their immediate families, and their legal representatives, heirs, successors, or assigns, and any entity in which Individual Defendants have a controlling interest.

1.2. "Effective Date" means the date that the Judgment, which approves in all material respects the releases provided for in the Stipulation and dismisses the Action with prejudice, becomes Final.

1.3. "Final" means no longer subject to review upon appeal or review in connection with a Petition for Writ of Certiorari or similar writ, whether by exhaustion of any possible appeal, lapse of time, or otherwise.

1.4. "Judgment" means the Order and Final Judgment entered by the Court, substantially in the form annexed hereto as Exhibit C.

1.5. "Notice" means the Notice of Pendency of Settlement of Action, substantially in the form annexed hereto as Exhibit B.

1.6. "Person" means a natural person, individual, corporation, partnership, limited partnership, limited liability partnership, limited liability company, association, joint venture, joint stock company, estate, legal representative, trust, unincorporated association, government, or any political subdivision or agency thereof, any business or legal entity, and any spouse, heir, legatee, executor, administrator, predecessor, successor, representative, or assign of any of the foregoing.

1.7. "Plaintiff's Counsel" means Farnan LLP and Levi & Korsinsky LLP.

1.8. "Released Claims" means and includes any and all claims for relief or causes of action, debts, demands, rights, or liabilities whatsoever, known or unknown, fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, against any Released Person(s), that (i) were asserted in the Action, (ii) could have been asserted in the Action; or (iii)

5

otherwise in any way relate to the 2010 Plan, compensation to Company personnel, or the granting of equity to Company personnel.

      1.9.    "Released Persons" means EnerNOC, the Individual Defendants, and insurers of EnerNOC and the Individual Defendants, together with their predecessors, successors, subsidiaries, affiliates, agents, attorneys, and each of their past or present officers, directors, and employees.

      1.10.   "Court" means the United States District Court for the District of Delaware.

      1.11.   "Scheduling Order" means an order scheduling a hearing on the Stipulation and approving the form of Notice and method of giving notice, substantially in the form annexed hereto as Exhibit A.

      1.12.   "Settlement Hearing" means the hearing (or hearings) at which the Court will review and assess the adequacy, fairness, and reasonableness of the Stipulation, and the appropriateness and amount of the award of attorneys' fees and expenses to be awarded by the Court (as set forth below).

## II.   TERMS OF SETTLEMENT AND RELEASES

      2.1.    In connection with the settlement the following terms constitute the consideration for the releases set forth herein and dismissal with prejudice of the Action:

- Within twenty-one (21) days of the Effective Date, the Individual Defendants shall cause their insurer to make a payment of $500,000 to EnerNOC;

- With respect to the grant of any incentive award, the Board of Directors of EnerNOC ("the Board") and its committees, including the Compensation Committee, shall at all times comply with the law, the committees' charters and other governing documents, and any applicable EnerNOC compensation plan, including the 2014 Plan.

- To ensure such compliance, the Company will engage a third party to review the process by which stock options and other equity award grants are made and delivered. This engagement shall include (1) a review of the Company's committee charters and other governing documents, and any applicable compensation plans, including the 2014 Plan, and (2) the development of a checklist of key provisions to be reviewed prior to the issuance and delivery of any incentive awards. Among other things, that checklist must require that the Company's Vice President of Human Resources or his/her designee analyze and confirm that, with respect to any contemplated incentive award: (i) the overall shares available under the applicable plan are sufficient to cover the proposed grant; and (ii) the individual limits set forth in the applicable plan would not be exceeded by awarding the proposed grant, with such confirmation to include an analysis of the proposed grant and all other grants occurring during the relevant period.

6

- The Board shall retain adequate documentation of all awards made under the 2014 Plan and will appoint an appropriate individual(s) to monitor compliance with the foregoing compliance procedures and checklist.

- In negotiating an employment agreement with an executive officer or prospective executive officer, the Board or its designee will review the proposed terms of the agreement to ensure that such terms are not inconsistent with the terms of the 2014 Plan or any other applicable compensation plan.

- The Compensation Committee will adopt an Equity Grant Policy that describes the method used to determine grant dates, which the Company will also describe in the Compensation Discussion and Analysis Section of the Company's Definitive Proxy Statements.

2.2. The obligations incurred pursuant to this Stipulation shall be in full and final disposition of the Actions and any and all Released Claims.

2.3. Upon the Effective Date, Plaintiff (on his own behalf and derivatively on behalf of EnerNOC), Plaintiff's Counsel, EnerNOC, and each and every Current EnerNOC Stockholder claiming by, through, in the right of, derivatively, or on behalf of EnerNOC shall have and by operation of the Judgment shall be deemed to have fully, finally, and forever released, relinquished, and discharged any and all of the Released Claims. Each and every EnerNOC stockholder claiming derivatively on behalf of EnerNOC will be bound by EnerNOC's release of the Released Claims.

2.4. Notwithstanding the release described above, nothing herein is intended to affect any rights with respect to past or future indemnification or advancement or payment of past or future legal fees and defense costs arising under and pursuant to any Released Person's respective indemnification agreements with EnerNOC, EnerNOC's certificate of incorporation or by-laws, applicable law, equity or other contract.

2.5. Plaintiff, in his individual capacity, and derivatively on behalf of EnerNOC, acknowledges that he may discover facts in addition to or different from those now known or believed to be true with respect to the subject matter of the Released Claims, but that it is his intention to fully, finally, and forever settle and release with prejudice any and all of the Released Claims. Plaintiff and his counsel shall be deemed to have waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of California Civil Code § 1542 (and equivalent, comparable, or analogous provisions of the laws of the United States or

any state or territory thereof, or of the common law). California Civil Code § 1542 provides that:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

2.6. Nothing herein shall in any way impair or restrict the rights of the Parties to enforce the terms of the settlement pursuant to this Stipulation.

### III. ATTORNEYS' FEES AND EXPENSES

3.1. Plaintiff and Plaintiff's Counsel may apply to the Court for an award of attorneys' fees and expenses in connection with their prosecution of the Action, to be paid by EnerNOC and its insurers. Plaintiff and Plaintiff's counsel may apply to the Court for an award of attorneys' fees and expenses which, in the aggregate, does not exceed $400,000, and Defendants will not oppose any application for an award of fees and expenses that does not exceed that sum.

3.2. Plaintiff may also apply to the Court for an incentive award of up to $2,000 which, if awarded by the Court, shall be deducted from any award of attorneys' fees made pursuant to paragraph 3.1 above, such that in no event will the sum payable by EnerNOC exceed $400,000 in total.

3.3. EnerNOC and its insurers shall pay the amount or amounts the Court awards, up to $400,000, pursuant to any fee and expense application. Payment shall be due within twenty-one (21) days following the Effective Date. In the event that the Court awards an amount in excess of $400,000, Defendants shall have the right to terminate this Stipulation and settlement.

3.4. Court approval of the Stipulation is not in any way conditioned on Court approval of the fee and expense application or any incentive award application. Disallowance by the Court of any application for fees and expenses or an incentive award, or any portion thereof, any appeal from any order relating thereto, and any modification or reversal on appeal of any such order, shall not operate to terminate or cancel the Stipulation or affect its other terms, including the releases set forth herein, or affect or delay the finality of the Judgment approving the Stipulation.

3.5. Payment of the amount or amounts the Court awards pursuant to the fee and expense applications to Plaintiff's Counsel shall constitute full satisfaction of any obligation to pay any amounts to any person, attorney, or law firm for attorneys' fees, expenses, or costs incurred by any attorney on behalf of Plaintiff and/or Mr. Wei with respect to the claims asserted in the Action against Defendants, and shall relieve Defendants of any other claims or liability to any other attorney or law firm for any attorneys' fees, expenses, and/or costs to which any of them may claim to be entitled on behalf of Plaintiff or Mr. Wei with respect to the claims asserted in the Action.

## IV. SCHEDULING ORDER AND SETTLEMENT HEARING

4.1. Within ten (10) business days after execution of the Stipulation, the Parties shall jointly submit the Stipulation together with its related documents to the Court, and shall apply to the Court for entry of the Scheduling Order, in the form annexed hereto as Exhibit A.

4.2. No later than sixty (60) days prior to the date the Court sets for the Settlement Hearing, Defendants shall cause the Notice, substantially in the form annexed hereto as Exhibit B, to be disseminated to stockholders by the same methods EnerNOC uses to disseminate its proxy statement in the ordinary course. The cost of the notice shall initially be split equally by Plaintiff and Defendants provided, however, that in the event that the $500,000 payment described above is made to EnerNOC, then the notice cost will be reimbursed from that $500,000 sum to the person(s) who paid the cost of the notice.

4.3. At least ten (10) business days prior to the Settlement Hearing, an affidavit attesting to compliance with the notice provisions set forth in the Scheduling Order shall be filed with the Court by Defendants.

4.4. The Parties and their attorneys agree to use their individual and collective best efforts to obtain Court approval of the Stipulation. The Parties and their attorneys further agree to use their individual and collective best efforts to effect, take, or cause to be taken all actions, and to do, or cause to be done, all things reasonably necessary, proper, or advisable under applicable laws, regulations, and agreements to consummate and make effective, as promptly as practicable, the Stipulation provided for hereunder and the dismissal of the Action.

## V. STANDSTILL AGREEMENT

5.1. Pending Court approval of the Stipulation, the Parties agree to stay any and all proceedings in the Action other than those incident to the Stipulation.

5.2. Pending final determination of whether the Stipulation should be approved, all Parties to the Action agree not to institute, commence, prosecute, continue, or in any way participate in, whether directly or indirectly, representatively, individually, derivatively on behalf of EnerNOC, or in any other capacity, any action or other proceeding asserting any Released Claims.

5.3. However, nothing herein shall in any way impair or restrict the rights of any party to defend this Stipulation or to otherwise respond in the event any Person objects to the Stipulation, the proposed Judgment to be entered, and/or the fee and expense applications.

5.4. In the event the Stipulation does not become Final or no Effective Date occurs, for any reason, the Parties will be placed in the positions they held prior to the execution of this Stipulation, and they will retain all their rights to pursue claims and defenses without prejudice, and all obligations under this Stipulation will become null and void.

## VI. DISMISSAL OF ACTION

6.1. If the Court approves the Stipulation, the Parties shall promptly request the Court to enter the proposed Judgment, substantially in the form annexed hereto as Exhibit C. In the event that such proposed Judgment is not entered upon the Parties' request, Section 5.4 is applicable.

## VII. MISCELLANEOUS PROVISIONS

7.1. This Stipulation reflects, among other things, the compromise and settlement of disputed claims among the Parties hereto, and neither this Stipulation nor the releases given herein, nor any consideration, nor any actions taken to carry out this Stipulation are intended to be, nor may they be deemed or construed to be, an admission or concession of liability (or lack thereof) or of the validity of any claim, or defense, or of any point of fact or law on the part of any Party hereto regarding those facts that have been, might have been, or might be alleged in the Action or in any other proceeding. The Released Persons may file the Stipulation and/or Judgment in any action that has been or may be brought against them in order to support a claim

or defense based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

   7.2. This Stipulation shall be deemed to have been mutually prepared by the Parties hereto and shall not be construed against any of them by reason of authorship.

   7.3. This Stipulation may be executed in one or more counterparts, each of which shall be deemed to be an original and all of which shall constitute one and the same document.  Any signature to the Stipulation by means of facsimile or electronically scanned and sent via email shall be treated in all manner and respects as an original signature and shall be considered to have the same binding legal effect as if it were the original signed version thereof.

   7.4. All Persons executing this Stipulation thereby represent that they have been authorized and empowered to do so.

   7.5. Plaintiff and Plaintiff's Counsel represent and warrant that none of the claims referred to in this Stipulation or that could have been alleged in the Action have been assigned, encumbered, or in any manner transferred in whole or in part.

   7.6. This Stipulation embodies and represents the full agreement of the Parties and supersedes any and all prior agreements and understandings relating to the subject matter hereof between or among any of the Parties hereto.  This Stipulation shall not be modified or amended, nor shall any provision of this Stipulation be deemed waived, unless such modification, amendment, or waiver is in writing and executed by or on behalf of the Parties.  The waiver or breach by any Party of any provision of this Stipulation shall not be deemed a waiver or breach of any other provision of this Stipulation.

   7.7. The Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto.

   7.8. Notwithstanding the entry of the Judgment, the Court shall retain jurisdiction with respect to the implementation, enforcement, and interpretation of the terms of the Stipulation, and all Parties submit to the jurisdiction of the Court for purposes of implementing, enforcing, and interpreting the Stipulation.

   7.9. The construction and interpretation of this Stipulation shall be governed by and construed in accordance with the laws of the State of Delaware and without regard to the laws that might otherwise govern under principles of conflicts of law applicable hereto.

      7.10.    Without further order of the Court, the Parties hereto may agree to reasonable extensions of time to carry out any of the provisions of the Stipulation.

      7.11.    The following exhibits are annexed hereto and incorporated herein by reference:

          (a)    Exhibit A: Scheduling Order With Respect to Notice and Settlement Hearing

          (b)    Exhibit B: Notice of Pendency of Settlement of Action

          (c)    Exhibit C: Final Order and Judgment

**IN WITNESS WHEREOF, IT IS HEREBY AGREED** by the undersigned as of the date noted above.


[SIGNATURE PAGES FOLLOW]

| | |
|---|---|
| Dated: August 7, 2014 | Respectfully submitted, |
| FARNAN LLP | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| /s/ Brian E. Farnan | /s/ D. McKinley Measley |
| Brian E. Farnan (Bar. No. 4089) | William M. Lafferty (#2755) |
| Michael J. Farnan (Bar No. 5165) | D. McKinley Measley (#5108) |
| Rosemary J. Piergiovanni (Bar No. 3655) | 1201 N. Market Street |
| 919 N. Market Street, 12th Floor | P.O. Box 1347 |
| Wilmington, Delaware 19801 | Wilmington, DE 19899-1347 |
| Tel: (302) 777-0300 | (302) 658-9200 |
| Fax: (302) 777-0301 | wlafferty@mnat.com |
| bfarnan@farnanlaw.com | dmealsey@mnat.com |
| mfarnan@farnanlaw.com | |
| rpiergiovanni@farnanlaw.com | Jeffrey Rudman |
| | Andrea Robinson |
| Steven J. Purcell | Timothy Perla |
| Levi & Korsinsky LLP | Wilmer Cutler Pickering Hale and Dorr LLP |
| 30 Broad Street, 24th floor | 60 State Street |
| New York, NY 10004 | Boston, MA 02109 |
| Tel: 212-363-7500 | |
| Fax: 866-367-6510 | *Attorneys for Defendants* |
| *Attorneys for Plaintiff* | |