**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| EUGENE BASCH, derivatively on behalf of ENERNOC, INC. and individually on behalf of himself and all other similarly situated shareholders of ENERNOC, INC.,<br><br>        Plaintiff,<br><br>vs.<br><br>TIMOTHY G. HEALY, NEIL MOSES, DAVID B. BREWSTER, ARTHUR W. COVIELLO, JR., RICHARD DIETER, TJ GLAUTHIER, SUSAN F. TIERNEY, JAMES BAUM, PETER GYENES, ADAM GROSSER, and JAMES L. TURNER,<br><br>        Defendants,<br><br>   -and-<br><br>ENERNOC, INC., a Delaware Corporation,<br><br>        Nominal Defendant. | Civil Action No. 13-cv-766-GMS |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION
FOR FINAL APPROVAL OF THE PROPOSED SETTLEMENT AND FOR AN
AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

Dated: November 21, 2014

Of Counsel:

LEVI & KORSINSKY LLP
Eduard Korsinsky
Steven J. Purcell
30 Broad Street, 24th Floor
New York, New York 10004
Tel: (212) 363-7500

Brian E. Farnan (Bar No. 4089)
Rosemary J. Piergiovanni (Bar No. 3655)
FARNAN LLP
919 N. Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
bfarnan@farnanlaw.com
rpiergiovanni@farnanlaw.com

*Attorneys for Plaintiff*

## <u>TABLE OF CONTENTS</u>

NATURE AND STAGE OF PROCEEDINGS ........................................................................ 1

SUMMARY OF ARGUMENT ............................................................................................ 3

STATEMENT OF FACTS .................................................................................................. 3

ARGUMENT .................................................................................................................... 5

    I.   Approval of the Settlement is warranted because it is fair, reasonable, and adequate. ...... 5

        A. The Settlement should be approved because Plaintiff obtained significant benefits for EnerNOC and its shareholders. .............................................................. 6

        B. Plaintiff achieved significant benefits without the need for expensive and protracted litigation. ................................................................................... 8

    II.  The parties provided adequate notice of the Settlement to EnerNOC's shareholders. ..... 10

    III. Plaintiff's counsel is entitled to an award of reasonable attorneys' fees and expenses because this litigation conferred a substantial benefit on EnerNOC and its shareholders. ................................................................................................... 10

        A. Courts favor a negotiated resolution of attorneys' fees. .............................................. 11

        B. This action produced substantial benefits to EnerNOC and its shareholders. .............. 12

        C. The requested award of attorneys' fees and expenses is reasonable. .......................... 15

    IV. KWL Trust does not raise any valid reason not to approve the settlement and award of attorneys' fees and expenses. ...................................................................... 16

CONCLUSION ................................................................................................................ 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ams. Mining Corp. v. Theriault*,
   51 A.3d 1213 (Del. 2012) ........................................................................... 12, 15, 17

*Chrysler Corp. v. Dann*,
   223 A.2d 384 (Del. 1996) ....................................................................................... 15

*Ehrheart v. Verizon Wireless*,
   609 F.3d 590 (3d Cir. 2010) .................................................................................... 5

*Girsh v. Jepson*,
   521 F.2d 153 (3d Cir. 1975) .................................................................................... 6

*Hensley v. Eckherhart*,
   461 U.S. 424 (1983)................................................................................................ 11

*Holland v. New Jersey Res. Corp.*,
   3:12-CV-7858-AET-LHG (D.N.J. Jan. 29, 2014) ................................................ 11

*In re BankAmerica Corp. Sec. Litig.*,
   210 F.R.D. 694 (E.D. Mo. 2002) ........................................................................... 10

*In re BEA Sys. Deriv. Litig.*,
   2009 WL 815452 (N.D. Cal. Mar. 27, 2009)......................................................... 12

*In re Cendant Corp.*,
   232 F. Supp. 2d 327 (D.N.J. 2002) .................................................................... 8, 16

*In re Intel Corp. Deriv. Litig.*,
   2010 WL 2955178 (D. Del. July 22, 2010) ............................................................ 6

*In re Johnson & Johnson Derivative Litig.*,
   900 F. Supp. 2d 467 (D.N.J. 2012) .......................................................................... 5

*In re PAR Pharm. Secs. Litig.*,
   2013 WL 3930091 (D.N.J. July 29, 2013)............................................................... 6

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998) .................................................................................. 10

*In re Rite Aid Corp. Secs. Litig.*,
   146 F. Supp. 2d 706 (E.D. Pa. 2001) ...................................................................... 6

*In re Sauer-Danfoss Inc. S'holders Litig.*,
   65 A.3d 1116 (Del. Ch. 2011) ............................................................................... 15

*In re SmithKline Beckman Corp. Sec. Litig.*,
   751 F. Supp. 525 (E.D. Pa. 1990) ........................................................................... 9

*In re Talley Indus., Inc. S'holders Litig.*,
   1998 WL 191939 (Del. Ch. Apr. 13, 1998)........................................................... 14

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) ............................................................................... 5, 9

*Ingram v. Coca-Cola Co.*,
　200 F.R.D. 685 (N.D. Ga. 2001)........................................................................... 11

*Kahan v. Rosenstiel*,
　424 F.2d 161 (3d Cir. 1970) ................................................................................ 12

*Kyriazi v. Western Elec. Co.*,
　647 F.2d 388 (3d Cir. 1981) ................................................................................ 10

*Meijer, Inc. v. 3M*,
　2006 WL 2382718 (E.D. Pa. Aug. 14, 2006) ........................................................ 9

*Mills v. Electric Auto-Lite Co.*,
　396 U.S. 375 (1970)..................................................................................... 12, 13

*Moses v. Pickens*,
　1982 WL 17825 (Del. Ch. Nov. 10, 1982) .................................................. passim

*O'Brien v. Brain Research Labs, LLC*,
　2012 WL 3242365 (D.N.J. Aug. 9, 2012) ........................................................ 7, 9

*Olson v. EV3, Inc.*,
　2011 WL 704409 (Del. Ch. Feb. 21, 2011) ............................................. 15, 16, 17

*Pro v. Hertz Equip. Rental Corp.*,
　2013 WL 3167736 (D.N.J. June 20, 2013)............................................................ 9

*Ryan v. Gifford*,
　2009 WL 18143 (Del. Ch. Jan. 2, 2009)............................................................. 13

*Sec. Mut. Life Ins. Co. v. Contemporary Real Estate Assoc.*,
　979 F.2d 329 (3d. Cir. 1992) .............................................................................. 12

*Shlensky v. Dorsey*,
　574 F. 2d 131 (3d Cir. 1978) ................................................................................ 6

*Stoetzner v. U.S. Steel Corp.*,
　897 F.2d 115 (3d Cir. 1990) ............................................................................... 10

*Sugarland Indus., Inc. v. Thomas*,
　420 A.2d 142 (Del. 1980) ....................................................................... 13, 15, 16

*Tandycrafts, Inc. v. Initio Partners*,
　562 A.2d 1162 (Del. 1989) ...................................................................... 12, 13, 15

*UFCW Local 880-Retail Food v. Newmont Mining Corp.*,
　352 F. App'x 232 (10th Cir. 2009) ...................................................................... 11

*Unite Nat'l Ret. Fund v. Watts*,
　2005 U.S. Dist. LEXIS 26246 (D.N.J. Oct. 27, 2005).................................... 10, 15

*Wyrick v. Redling*,
　2:11-CV-5036-PD (E.D. Pa. Dec. 12, 2012) ....................................................... 11

**Rules**

Fed. R. Civ. P. 23.1 ....................................................................................................... 5

Plaintiff Eugene Basch ("Plaintiff"), derivatively on behalf of EnerNOC, Inc. ("EnerNOC" or the "Company"), respectfully submits this memorandum of law in support of his Motion for Final Approval of the Proposed Settlement and for an Award of Attorneys' Fees and Reimbursement of Expenses.

Pursuant to the Stipulation of Settlement executed August 7, 2014 ("Stipulation"), Plaintiff respectfully requests that the Court enter an order (i) granting final approval of the derivative settlement ("Settlement"), (ii) awarding attorneys' fees and expenses to Plaintiff's counsel and an incentive award to Plaintiff, and (iii) dismissing this action with prejudice. For the reasons stated below, Plaintiff's Motion should be granted.

## NATURE AND STAGE OF PROCEEDINGS

On May 3, 2013, Lei Wei ("Wei") filed the first complaint initiating this action, alleging claims for breach of fiduciary duty, waste of corporate assets, and unjust enrichment in connection with certain equity awards granted to EnerNOC's Chairman of the Board and Chief Executive Officer, Timothy G. Healy ("Healy"), and Chief Financial Officer, Neil Moses ("Moses"), that allegedly exceeded an annual per-person limit on equity grants in the Company's Amended and Restated 2007 Employee, Director, and Consultant Stock Plan (the "Plan"). Wei also asserted a claim for allegedly false and misleading disclosures made in the Company's 2013 Schedule 14A Proxy Statement. In connection with that claim, Wei moved for a preliminary injunction to enjoin EnerNOC from holding its 2013 annual shareholder meeting until the alleged false and misleading statements were cured. (D.I. 4.) Wei withdrew his motion for a preliminary injunction after EnerNOC filed a supplemental proxy statement providing additional disclosures

1

on May 10, 2013. (D.I. 7.) Defendants[1] thereafter filed a motion to dismiss, which was fully briefed prior to being stayed after the parties entered into the Stipulation. (D.I. 17, 19, 20, 32.)

On May 27, 2014, Plaintiff replaced Wei as the party-plaintiff and filed the Verified Shareholder Derivative and Class Action Amended Complaint (the "Amended Complaint"), which was substantially identical to the complaint filed by Wei. (D.I. 26.) Thereafter the parties continued the informal settlement discussions that had taken place periodically since the litigation was commenced, eventually appearing for a full-day, in-person mediation before Jed Melnick of JAMS, Inc. After extensive, arm's length negotiations, the parties reached an agreement to resolve this litigation. Among other things, the terms of the Settlement provide that (1) the Individual Defendants (through their insurer) will pay the Company $500,000 in cash; (2) EnerNOC will adopt certain specified enhanced internal controls and additional corporate governance procedures designed to ensure that equity compensation grants are compliant with the Company's shareholder-approved compensation plans and applicable law; and (3) the Board's Compensation Committee will adopt an Equity Grant Policy describing the method used to determine grant dates and EnerNOC will describe that policy to shareholders in the Company's Definitive Proxy Statements. The parties filed the Stipulation with the Court on August 7, 2014, and the Court scheduled a Settlement hearing for December 16, 2014. Subsequently, EnerNOC disseminated the Notice of Proposed Settlement of Action ("Notice") to shareholders in accordance with the Court's order.

---

[1] As used herein, "Individual Defendants" refers to Healy, Moses, James Baum ("Baum"), David B. Brewster ("Brewster"), Arthur W. Coviello, Jr. ("Coviello"), Richard Dieter ("Dieter"), TJ Glauthier ("Glauthier"), Adam Grosser ("Grosser"), Peter Gyenes ("Gyenes"), Susan F. Tierney ("Tierney"), and James L. Turner ("Turner"). Other than Moses, Grosser, and Turner, the Individual Defendants were members of the Company's Board at the time the action was commenced. "Defendants" refers to the Individual Defendants and nominal defendant EnerNOC.

## SUMMARY OF ARGUMENT

1.    The Court should grant final approval of the Settlement because the Settlement provides substantial immediate and long-term benefits to the Company and its shareholders.

2.    Plaintiff is entitled to an award of reasonable attorneys' fees and expenses for his counsel on account of the substantial benefits conferred on EnerNOC and its shareholders through the Settlement. The requested fee and expense award of $400,000 would fairly compensate Plaintiff's counsel in this case and is otherwise reasonable and consistent with applicable law.

## STATEMENT OF FACTS

EnerNOC is incorporated in Delaware with its principal place of business in Massachusetts. (¶ 11.)[2] In 2007, the Plan was adopted by the Board and approved by EnerNOC's shareholders. (¶ 25.) The Plan provides that no more than 130,000 shares of awards may be granted to any one individual during a fiscal year. (¶ 27.) On February 17, 2010, the Board granted 100,000 stock options and 50,000 shares of restricted stock units to Healy under the Plan. (¶ 32.) On March 1, 2012, the Board granted Healy a total of 213,128 shares of restricted stock under the Plan. (¶ 35.) On February 15, 2013, the Board granted Healy 170,000 shares of restricted stock under the Plan. (¶ 38.) On April 22, 2013, the Company granted Moses 160,000 shares of restricted stock under the Plan. (¶ 39.) In total, the Board issued Healy and Moses 143,128 and 30,000 shares, respectively, allegedly in excess of the annual limit in the Plan (the "Challenged Shares").

---

[2] All references to "¶" are to the Amended Complaint (D.I. 27).

Following arm's-length and good faith negotiations, Plaintiff and Defendants entered into the Stipulation. The key terms of the Stipulation provide that (1) the Individual Defendants (through their insurer) will make a cash payment of $500,000 to EnerNOC (Stipulation ¶ 2.1); (2) the Company will adopt and implement a series of specific enhancements to its internal controls and corporate governance procedures designed to ensure that all future awards comply with any applicable EnerNOC compensation plan, including the EnerNOC, Inc. 2014 Long-Term Incentive Plan (the "2014 Plan"), which was approved by shareholders at EnerNOC's 2014 annual meeting (*Id.*); and (3) the Board's Compensation Committee will adopt an Equity Grant Policy that describes the method used to determine grant dates, and the Company will disclose this policy in its annual proxy statements. (*Id.*)

The Stipulation reflects the results of the parties' negotiations, and was reached with the assistance of a professional mediator after arm's-length negotiations between the parties, who were all represented by counsel with extensive experience and expertise in shareholder derivative and class action litigation. During the negotiations, all parties had a clear view of the strengths and weaknesses of their respective claims and defenses.

Although Plaintiff believes that the claims asserted in the Amended Complaint have merit and his claims were brought in good faith, Plaintiff's counsel recognizes and acknowledges the risk, expense and length of continued proceedings necessary to prosecute the action against the Defendants through trial and, potentially, through appeals. Plaintiff's counsel has taken into account the uncertain outcome inherent in any litigation, as well as the attendant difficulties and delays. Plaintiff's counsel is mindful of the inherent problems of proof under, and possible defenses to, the claims asserted in the action. Accordingly, Plaintiff and his counsel have concluded that the terms of the Settlement are fair, reasonable, adequate, and in the best interests

of the Company and its shareholders. As set forth in the Stipulation, Defendants deny any

liability in connection with the action and the claims asserted by Plaintiff in the Amended

Complaint. (Stipulation ¶ H.)

On August 7, 2014, the parties filed the Stipulation with the Court. (D.I. 30). On

September 23, 2014, the Court approved, in form and content, the Notice and scheduled a

hearing to, *inter alia*, determine whether the Court should finally approve the Stipulation and

enter the Order and Final Judgment as provided in the Stipulation and rule on Plaintiff's fee and

expense application. (D.I. 31.) On or about October 8, 2014, Defendants disseminated the

Notice to all holders of EnerNOC common and restricted stock as of September 29, 2014 in the

same manner as EnerNOC disseminates its proxy statements in the ordinary course. (D.I. 33

¶¶ 4-5.)

## ARGUMENT

**I.   Approval of the Settlement is warranted because it is fair, reasonable, and adequate.**

Plaintiff requests the Court's final approval of the Settlement pursuant to Rule 23.1 of the

Federal Rules of Civil Procedure. The Third Circuit favors settlement in complex litigation

matters, as it serves the public interest and conserves judicial resources. *In re Warfarin Sodium

Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004); *see Ehrheart v. Verizon Wireless*, 609 F.3d

590, 595 (3d Cir. 2010) (discussing the "strong presumption in favor of voluntary settlement

agreements," especially in "class actions and other complex cases where substantial judicial

resources can be conserved by avoiding formal litigation").

The Third Circuit considers a number of factors when determining the fairness,

reasonableness, and adequacy of a settlement, including derivative settlements. *In re Johnson &

Johnson Derivative Litig.*, 900 F. Supp. 2d 467, 479 (D.N.J. 2012). These factors, taken from

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), include: the range of reasonableness of the settlement in light of a better recovery and the risks in the litigation; the risks of establishing liability and damages; the expense and complexity of continued litigation; the stage and duration of the litigation; the reaction of the class to the settlement; and the ability of the defendants to withstand a greater judgment. *Id.* at 157 (citation omitted). "These factors are a guide and the absence of one or more does not automatically render the settlement unfair. Rather, the court must look at all the circumstances of the case and determine whether the settlement is within the range of reasonableness under *Girsh*." *In re PAR Pharm. Secs. Litig.*, 2013 WL 3930091, at *3 (D.N.J. July 29, 2013) (quotation omitted). As shown below, the Settlement is reasonable, fair, and adequate and merits final approval according to the applicable *Girsh* factors.

## A. The Settlement should be approved because Plaintiff obtained significant benefits for EnerNOC and its shareholders.

The "principal factor" to be considered in determining the fairness of a settlement of a shareholder derivative action "is the extent of the benefit to be derived from the proposed settlement by the corporation, the real party in interest." *In re Intel Corp. Deriv. Litig.*, 2010 WL 2955178, at *1 (D. Del. July 22, 2010) (quoting *Shlensky v. Dorsey*, 574 F. 2d 131, 147 (3d Cir. 1978)). In considering this factor, courts weigh the adequacy of the settlement "in the light of the best possible recovery, [and] the risks the parties would face if the case went to trial." *In re Rite Aid Corp. Secs. Litig.*, 146 F. Supp. 2d 706, 733 (E.D. Pa. 2001) (quotation omitted). Courts evaluate "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, with the amount of the proposed settlement." *PAR Pharm.*, 2013 WL 3930091, at *7 (citation omitted).

The Settlement here represents a triumph for EnerNOC and its shareholders. Under the terms of the Settlement, EnerNOC will receive $500,000 in cash as compensation for the

issuance of the Challenged Shares. In addition, the Settlement provides that the Company will

adopt and implement enhanced corporate governance procedures designed to ensure that future

awards comply with EnerNOC's compensation plans. Specifically:

- [T]he Company will engage a third party to review the process by which stock options and other equity award grants are made and delivered. This engagement shall include (1) a review of the Company's committee charters and other governing documents, and any applicable compensation plans, including the 2014 Plan, and (2) the development of a checklist of key provisions to be reviewed prior to the issuance and delivery of any incentive awards. Among other things, that checklist must require that the Company's Vice President of Human Resources or his/her designee analyze and confirm that, with respect to any contemplated incentive award: (i) the overall shares available under the applicable plan are sufficient to cover the proposed grant; and (ii) the individual limits set forth in the applicable plan would not be exceeded by awarding the proposed grant, with such confirmation to include an analysis of the proposed grant and all other grants occurring during the relevant period.

- The Board shall retain adequate documentation of all awards made under the 2014 Plan and will appoint an appropriate individual(s) to monitor compliance with the foregoing compliance procedures and checklist.

- In negotiating an employment agreement with an executive officer or prospective executive officer, the Board or its designee will review the proposed terms of the agreement to ensure that such terms are not inconsistent with the terms of the 2014 Plan or any other applicable compensation plan.

- The Compensation Committee will adopt an Equity Grant Policy that describes the method used to determine grant dates, which the Company will also describe in the Compensation Discussion and Analysis Section of the Company's Definitive Proxy Statements.

(Stipulation § 2.1.)

In approving a settlement, the Court may also consider the likelihood of establishing

liability and damages, "giv[ing] credence to the estimation of the probability of success proffered

by [] counsel, who are experienced with the underlying case, and the possible defenses which

may be raised to their causes of action." *O'Brien v. Brain Research Labs, LLC*, 2012 WL

3242365, at *17-18 (D.N.J. Aug. 9, 2012) (citation omitted). While Plaintiff believes that the

7

claims asserted were very strong, there are risks associated with prosecuting the case through trial and, potentially, through appeals. Defendants raised many defenses in their brief in support of dismissal and no doubt would have identified more areas of disagreement when not constrained to pleadings-stage arguments. (D.I. 17 at 7-20.) In light of this uncertainty, Plaintiff was required to weigh the value of a negotiated resolution that provides substantial relief on all claims against the risk of engaging in protracted litigation and losing at trial. Specifically, Plaintiff considered:

> (i) the attendant risks of continued litigation and the uncertainty of the outcome of the Action; (ii) the probability of success on the merits; (iii) the inherent problems of proof associated with, and possible defenses to, the claims asserted in the Action; (iv) the desirability of permitting the settlement to be consummated according to its terms; (v) the expense and length of continued proceedings necessary to prosecute the Action through trial and appeals; (vi) the fact that EnerNOC's by-laws exculpate duty of care claims; and (vii) the conclusion of Plaintiff and his counsel that the terms and conditions of the Stipulation are fair, reasonable, and adequate, and that it is in the best interests of EnerNOC and its stockholders to settle the Action on the terms set forth herein.

(Stipulation § G.)

### B.   Plaintiff achieved significant benefits without the need for expensive and protracted litigation.

In considering whether to approve a settlement, courts also look to "the degree of case development that class counsel [has] accomplished prior to settlement." *In re Cendant Corp.*, 232 F. Supp. 2d 327, 334 (D.N.J. 2002) (quotation omitted). Plaintiff conducted a thorough investigation of the subject matter of this litigation, which included: (1) reviewing and analyzing EnerNOC's filings with the U.S. Securities & Exchange Commission, press releases, announcements, media reports, and news articles; (2) drafting the pleadings and motion for preliminary injunction; (3) researching applicable law with respect to the claims asserted, damages and potential defenses; and (4) negotiating the terms of an appropriate settlement.

Accordingly, Plaintiff was able to make a well-informed decision about the fairness, adequacy, and reasonableness of the Settlement.

Further, given the nature of the claims asserted by Plaintiff, discovery would have been extensive if litigation had proceeded. Plaintiff would likely have received and reviewed thousands of pages of documents, engaged in written discovery, and deposed Defendants and potentially other EnerNOC employees and consultants. This discovery would have been a costly and time-consuming process. On the other hand, an early settlement in this matter would obviate the need for further discovery, dispositive motions, trial, and the potential for post-trial motions and appeals, the costs of which would be exponentially greater than they are at present. *See Pro v. Hertz Equip. Rental Corp.*, 2013 WL 3167736, at *3 (D.N.J. June 20, 2013); *O'Brien*, 2012 WL 3242365, at *13 (early settlement allowed parties to avoid "adversarial path of litigation").[3]

The shareholders' response to the Settlement also supports final approval. "The reaction of the class to the proffered settlement is perhaps the most significant factor to be weighed in considering its adequacy." *In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 530 (E.D. Pa. 1990). Here, despite there being over 30 million outstanding shares of EnerNOC common stock and thousands of EnerNOC shareholders, Plaintiff's counsel has received a single objection (which the parties believe is without merit, as discussed below). This in and of itself is convincing evidence of the Settlement's fairness, reasonableness and adequacy. *See Stoetzner v.*

---

[3] That Defendants may have the ability to withstand a judgment for an amount significantly greater than the Settlement does not influence the overall conclusion that the Settlement is reasonable, fair, and adequate. *See Meijer, Inc. v. 3M*, 2006 WL 2382718, at *16 (E.D. Pa. Aug. 14, 2006) (finding that even when defendant "likely can withstand a judgment significantly greater than the [s]ettlement . . . this determination in itself does not carry much weight in evaluating the fairness of the Settlement" (citation omitted)); *see also Warfarin*, 391 F.3d at 538 (stating that even if the defendant "could afford to pay more does not mean that it is obligated to pay any more than [plaintiffs] are entitled to under the theories of liability that existed at the time the settlement was reached").

*U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (finding that "only" 29 objections out of a 281 member class "strongly favors settlement").

**II.    The parties provided adequate notice of the Settlement to EnerNOC's shareholders.**

Nonparty shareholders must receive notice of a proposed settlement. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 326 (3d Cir. 1998). The notice "must be sufficiently informative and give sufficient opportunity for response." *Kyriazi v. Western Elec. Co.*, 647 F.2d 388, 395 (3d Cir. 1981). The Court required that the Notice be disseminated to EnerNOC's shareholders in the same manner that EnerNOC uses to disseminate its proxy statements, which Defendants did on or about October 8, 2014. (D.I. 31 ¶ 4; D.I. 33 ¶¶ 4-5.) The Notice was nine pages long and described the litigation and Settlement terms in full. The Notice advised shareholders that they had the right to object and/or be heard and allowed nearly two months for objections to be lodged. *See, e.g.*, *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 708 (E.D. Mo. 2002) (finding notice sufficient where "[t]here were three to four weeks between the mailing of class notice and the last date to object"). As the parties provided fair notice in accordance with the Scheduling Order, notice was sufficient for the purposes of settlement. *See, e.g.*, *Unite Nat'l Ret. Fund v. Watts*, 2005 U.S. Dist. LEXIS 26246, at *22 (D.N.J. Oct. 27, 2005) (holding notice adequate where parties complied with hearing order).

**III.   Plaintiff's counsel is entitled to an award of reasonable attorneys' fees and expenses because this litigation conferred a substantial benefit on EnerNOC and its shareholders.**

Plaintiff's counsel respectfully requests that the Court approve an award of reasonable attorneys' fees and reimbursement of expenses in the amount of $400,000, of which Plaintiff would receive $2,000 as an incentive award.[4] The Court should grant the requested fee award

---

[4] The $2,000 incentive award would be paid out of the $400,000 in fees and expenses that Defendants have agreed to pay. Incentive awards are justified when necessary to induce

because it was agreed upon by the parties after arm's-length negotiations and is supported by applicable law.

**A. Courts favor a negotiated resolution of attorneys' fees.**

Pursuant to the Stipulation, and following arm's-length negotiations, the Company has agreed to pay Plaintiff's counsel's fees and expenses up to $400,000. The Supreme Court has endorsed the consensual resolution of attorneys' fee issues in cases like this. *Hensley v. Eckherhart*, 461 U.S. 424, 437 (1983) ("A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee."). Absent evidence of collusion or detriment to the parties, courts should give "substantial weight to a negotiated fee amount." *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001).

The parties began negotiating attorneys' fees only after agreeing to the substantive terms of the settlement and, as with the Stipulation itself, the fee was negotiated at arm's length between experienced counsel, and was not the product of fraud, overreach, or collusion. As such, the Court should give substantial weight to the negotiated fee and grant Plaintiff the requested fee award.

---

individuals to become named representatives or to compensate for personal risk and additional effort or expertise. *UFCW Local 880-Retail Food v. Newmont Mining Corp.*, 352 F. App'x 232, 235 (10th Cir. 2009). Plaintiff's requested $2,000 incentive award is within the range of reasonableness. *See Holland v. New Jersey Res. Corp.*, 3:12-CV-7858-AET-LHG, Final Order and Judgment (D.N.J. Jan. 29, 2014) (approving a stipulation and agreement of settlement that provided plaintiff a $2,000 incentive fee from attorneys' fee award) (the order and the stipulation are attached as Ex. 1 and Ex. 2, respectively, to Declaration of Brian E. Farnan, dated November 21, 2014 ("Farnan Decl.")); *Wyrick v. Redling*, 2:11-CV-5036-PD, Final Order and Judgment (E.D. Pa. Dec. 12, 2012) (awarding plaintiff $5,000 incentive fee and stating "[b]ecause the incentive payment is 'to come from the attorneys' fees awarded to plaintiff's counsel,' it 'need not be subject to intensive scrutiny, as the interests of the corporation, the public, and the defendants are not directly affected.'" (citation omitted)) (Farnan Decl., Ex. 3).

**B. This action produced substantial benefits to EnerNOC and its shareholders.**

Alternatively, attorneys' fees and expenses may be awarded when counsel's efforts have conferred a benefit on members of an ascertainable class or on behalf of the company on whose behalf suit was brought. *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 393-97 (1970).[5] This legal principle – known as the substantial benefit doctrine – is based on the equitable proposition that it would "be unjust to require one party to bear the entire expense which necessarily results in a benefit to a large class of persons" and that the beneficiaries of the litigation should instead "share the costs proportionally." *Kahan v. Rosenstiel*, 424 F.2d 161, 165-66, 167 (3d Cir. 1970).

The substantial benefit doctrine recognizes that the benefits conferred by representative litigation may be either monetary or non-monetary. *Mills*, 396 U.S. at 396. Monetary benefits include the recovery of money or property wrongfully diverted from the corporation, or measures that lead to monetary savings in the future. *Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162, 1164-65 (Del. 1989). The creation of monetary benefits is "a well-established basis for awarding attorneys' fees" in Delaware, entitling counsel who recovers money for the "benefit of persons other than himself or his client . . . to a reasonable attorney's fee from the fund as a whole." *Ams. Mining Corp. v. Theriault*, 51 A.3d 1213, 1252-53 (Del. 2012) (quotation omitted). "When the benefit is quantifiable, . . . an award of attorneys' fees [is] based upon a percentage of the benefit." *Id.* at 1259.

The litigation has conferred multiple benefits on EnerNOC, including recovering the significant and immediate tangible monetary benefit of $500,000. It is well-established that

---

[5] Because EnerNOC is a Delaware corporation, Delaware law applies to Plaintiff's application for an award of attorneys' fees and expenses. *Sec. Mut. Life Ins. Co. v. Contemporary Real Estate Assoc.*, 979 F.2d 329, 331-32 (3d. Cir. 1992). However, as "Delaware and federal law are in accord on the issue of derivative counsel fees," federal law is also appropriately considered. *In re BEA Sys. Deriv. Litig.*, 2009 WL 815452, at *2 (N.D. Cal. Mar. 27, 2009) (citation omitted).

settlements involving cash repayments confer substantial benefits that justify an award of fees. *See, e.g.*, *Sugarland Indus., Inc. v. Thomas*, 420 A.2d 142, 152 (Del. 1980) (explaining that the benefit to a corporation is measured in dollars for a derivative action where "directors were required to restore to the corporation … stock options improperly given"); *Moses v. Pickens*, 1982 WL 17825, at *1 (Del. Ch. Nov. 10, 1982) (approving an award of fees and expenses for settlement consisting of surrender of stock options).

Plaintiff's efforts have also created valuable long-term cost savings to EnerNOC, causing the Company to adopt enhanced corporate governance procedures. Attorneys' fee awards are warranted where a plaintiff's action leads to improved corporate governance or enhanced corporate disclosures. *See, e.g.*, *Mills*, 396 U.S. at 395, 396 ("[A] corporation may receive a 'substantial benefit' from a derivative suit, justifying an award of counsel fees, regardless of whether the benefit is pecuniary in nature."). In *Ryan v. Gifford*, 2009 WL 18143 (Del. Ch. Jan. 2, 2009), the Delaware Court of Chancery recognized that corporate governance reforms "can provide substantial benefits," and found that corporate governance reforms meant to prevent any future wrongful option grants to be "significant" when awarding attorneys' fees and expenses of $9.5 million. *Id.* at *10, *13, *14.

Here, EnerNOC agreed to a number of important reforms. (*See supra* at I.A.) While corporate governance reforms can be difficult to value, the parties agree that the value of these reforms is substantial. (Stipulation § G.) As such, these reforms justify an award of attorneys' fees under the substantial benefit doctrine. *Tandycrafts, Inc.*, 562 A.2d at 1164-1165 (recognizing that derivative lawsuits that "result in the imposition of changes in internal operating procedures that are designed to produce . . . monetary savings in the future[] are viewed as fund creating actions" that justify an award of attorneys' fees).

13

In addition, the litigation caused EnerNOC shareholders to receive an additional substantial benefit, as Defendants agree, in the form of the corrective disclosures the Company issued following the filing of the initial complaint and motion for a preliminary injunction. (Stipulation § C.) Because of these supplemental disclosures EnerNOC's shareholders received for the first time proper information concerning the Board's administration of the Plan and the compensation paid to Healy and Moses. There can be no question that disclosures of this nature were material to shareholders, particularly with respect to the vote to increase the total number of shares authorized for issuance under the Plan at the 2013 annual meeting, as over seven million shares were voted against the share increase. (EnerNOC Form 8-K filed on June 3, 2013 (Farnan Decl., Ex. 4).) *See In re Talley Indus., Inc. S'holders Litig.*, 1998 WL 191939, at *15 (Del. Ch. Apr. 13, 1998) ("[T]he timely disclosure of the information in the supplement was presumably of greater value to the class than any potential award of damages based on the failure to disclose the same information, as such information is of the greatest utility when it is available in a timely manner to inform the stockholders' decision making process.").

The litigation has further benefited EnerNOC by impacting the specific terms of the 2014 Plan. The 2014 Plan notably contains an individual share limit that is different in nature and amount from its predecessor. *Compare* Plan § 4(c) (130,000 share limit), *with* 2014 Plan § 3(d(i) and (ii). Defendants acknowledge that Plaintiff's claims were considered in connection with creating the 2014 Plan. (Stipulation § E.) While this benefit, as well as the benefits due to the additional disclosure can be difficult to value concretely, the parties agree that the value of this benefit is substantial. (*Id.* at §§ B, G.)

14

**C.  The requested award of attorneys' fees and expenses is reasonable.**

In representative litigation such as this, the amount of the award of fees is left to the broad discretion of the Court. *Ams. Mining Corp.*, 51 A.3d at 1255; *Tandycrafts, Inc.*, 562 A.2d at 1164-65. In exercising its discretion, the Court considers what are known as the *Sugarland* factors. *Ams. Mining Corp.*, 51 A.3d at 1255. The Delaware Supreme Court has instructed that the benefit achieved by counsel is the primary and "most important" *Sugarland* factor considered in making a fee award. *Id.* The secondary factors include the contingent nature of the representation, the time and effort expended by counsel, the quality of the work performed, the standing and skill of the lawyers involved, and the complexity of the case. *Sugarland Indus.*, 420 A.2d at 149-50; *see Olson v. EV3, Inc.*, 2011 WL 704409, at *15 (Del. Ch. Feb. 21, 2011) (identifying these factors as the "Secondary *Sugarland* Factors").

Because of Plaintiff's efforts, EnerNOC will receive substantial cash and non-monetary benefits. Indeed, the significant corporate governance reforms warrant a substantial fee in their own right. *See, e.g.*, *Unite Nat'l Ret. Fund*, 2005 U.S. Dist. LEXIS 26246, at *16-18 (awarding a fee of $9.2 million for "the great benefit conferred upon [the corporation] as a result of the new corporate governance principles provided for in the settlement agreement" that "will serve to prevent and protect Shell from the reoccurrence of certain alleged wrongdoings"). In addition, Plaintiff secured additional disclosures in advance of the Company's 2013 meeting and the litigation had a further impact on the creation of the 2014 Plan, which shareholders approved earlier this year. This likewise supports the requested fee. *See, e.g.*, *Chrysler Corp. v. Dann*, 223 A.2d 384, 388-90 (Del. 1996) (finding that plaintiff was entitled to attorneys' fees in a derivative lawsuit that caused a "change in the [company's] [c]ompensation [p]lan"); *In re Sauer-Danfoss Inc. S'holders Litig.*, 65 A.3d 1116, 1136 (Del. Ch. 2011) (concluding that "meaningful

15

disclosures" can warrant fees awards ranging from $400,000 to $500,000 and opining that

disclosures concerning issues such as the "election of directors that lacks any explicit linkage to

quantifiable value[]" can constitute "meaningful disclosures").

Turning to the lesser *Sugarland* factors, the contingent nature of the representation and

the time and effort of counsel also support the fee request. Plaintiff's counsel undertook this

litigation on a contingency basis and assumed all risk that they "would be unable to successfully

prosecute [this] complex derivative action." *Cendant Corp.*, 232 F. Supp. 2d at 339. As discussed

above, Plaintiff caused the Company to be paid $500,000 in cash, develop and adopt corporate

governance reforms, and issue corrective disclosures. That Plaintiff was able to achieve these

benefits efficiently and without the need for extensive (and unnecessary) litigation should not be

weighed against him in awarding fees. *See Olson,* 2011 WL 704409, at *15 ("I give no weight to

the hours expended. Counsel achieved via settlement all of the relief that they could have

obtained by litigating through a merits hearing. Counsel should not be penalized for achieving

complete victory quickly.").

## IV.    KWL Trust does not raise any valid reason not to approve the settlement and award of attorneys' fees and expenses.

The only objection Plaintiff's counsel has received was a one and a half page letter sent

by the trustee of the KWL Trust. KWL Trust does not raise any meritorious arguments or suggest

any reason not to approve the Settlement or the agreed upon award of fees and expenses.

First, KWL Trust argues that the "proof of . . . breach [of the Plan] would be

straightforward," and the value of "the total shares subject to the excess 'stock rights,' at the time

of grant, was in the millions of dollars." These arguments are two sides of the same coin, with

KWL Trust simply assuming, without any analysis, that these propositions are easily proved.

This is not the case, as the multiple defenses raised by Defendants in their motion to dismiss

confirm. (D.I. 17 at 7-20.) Although KWL Trust asserts that the Challenged Shares were worth "millions of dollars," it is not actually clear that this is the case, or that the damages to EnerNOC were anywhere near this level. Undoubtedly, Defendants would strongly contest that EnerNOC suffered millions of dollars in damages.

Second, KWL Trust seemingly argues that the only permissible remedy here was for the Challenged Shares to be rescinded. KWL Trust has offered no support for that proposition or explained how the cash recovery is inadequate or undesirable. Third, KWL Trust asserts that the granting of the Challenged Shares diluted the value of EnerNOC stock. This is not true. The Plan has both an annual limit and an aggregate limit. It is the aggregate limit that is a limit on the Board's ability to dilute share value, and the Board did not violate that limit. Moreover, even if the Challenged Shares had a dilutive effect, any such effect was virtually non-existent in light of EnerNOC's public float of 30 million shares.

KWL Trust also argues that the agreed upon award of attorneys' fees and expenses is "excessive" "[a]t this early stage of the legal proceedings." The unstated premise of this argument contradicts the primary basis for awarding attorneys' fees, which is the benefit achieved. *See Ams. Mining Corp.*, 51 A.3d at 1255. As demonstrated, the benefits here were substantial, easily justifying the agreed-upon fee. Moreover, tying the fee to the stage of litigation, as opposed to the benefits achieved, would simply promote inefficiencies. Indeed, Plaintiff and Plaintiff's counsel "should not be penalized for achieving complete victory quickly." *Olson*, 2011 WL 704409, at *15.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court (i) grant final approval of the Settlement, (ii) award Plaintiff's counsel $400,000 in attorneys' fees and

reimbursement of expenses, and grant an incentive award to Plaintiff of $2,000 to be paid from

the award of attorneys' fees, and (iii) dismiss this action with prejudice.


Dated: November 21, 2014                          Respectfully submitted,

                                                  FARNAN LLP

                                                  /s/ Brian E. Farnan
Of Counsel:                                       Brian E. Farnan (Bar No. 4089)
                                                  Rosemary J. Piergiovanni (Bar No. 3655)
LEVI & KORSINSKY LLP                              919 N. Market Street, 12th Floor
Eduard Korsinsky                                  Wilmington, DE 19801
Steven J. Purcell                                 Telephone: (302) 777-0300
30 Broad Street, 24th Floor                       Facsimile: (302) 777-0301
New York, New York 10004                          bfarnan@farnanlaw.com
Tel: (212) 363-7500                               rpiergiovanni@farnanlaw.com
Fax: (866) 367-6510

                                                  *Attorneys for Plaintiff*